# UNITED STATES *v.* SUN-DIAMOND GROWERS OF CALIFORNIA

No. 98–131.   Argued March 2, 1999—Decided April 27, 1999

SCALIA, J., delivered the opinion for a unanimous Court.

*Robert W. Ray* argued the cause for the United States. With him on the briefs were *Donald C. Smaltz, Charles M. Kagay,* and *Stephen R. McAllister.*

*Eric W. Bloom* argued the cause for respondent. With him on the brief were *Richard A. Hibey* and *Charles B. Klein.**

JUSTICE SCALIA delivered the opinion of the Court.

Talmudic sages believed that judges who accepted bribes would be punished by eventually losing all knowledge of the divine law. The Federal Government, dealing with many public officials who are not judges, and with at least some judges for whom this sanction holds no terror, has constructed a framework of human laws and regulations defining various sorts of impermissible gifts, and punishing those who give or receive them with administrative sanctions, fines, and incarceration. One element of that framework is 18 U. S. C. § 201(c)(1)(A), the "illegal gratuity statute," which prohibits giving "anything of value" to a present, past, or future public official "for or because of any official act performed or to be performed by such public official." In this case, we consider whether conviction under the illegal gratuity statute requires any showing beyond the fact that a gratuity was given because of the recipient's official position.

I

Respondent is a trade association that engaged in marketing and lobbying activities on behalf of its member cooperatives, which were owned by approximately 5,000 individual

---

*Briefs of *amici curiae* urging affirmance were filed for the American League of Lobbyists by *Samuel J. Buffone* and *Thomas M. Susman;* and for the National Association of Criminal Defense Lawyers by *Carter G. Phillips, Thomas C. Green, Mark D. Hopson,* and *Lisa B. Kemler.*

*Solicitor General Waxman, Assistant Attorney General Robinson, Deputy Solicitor General Dreeben,* and *Malcolm L. Stewart* filed a brief for the United States Department of Justice as *amicus curiae.*

growers of raisins, figs, walnuts, prunes, and hazelnuts. Petitioner United States is represented by Independent Counsel Donald Smaltz, who, as a consequence of his investigation of former Secretary of Agriculture Michael Espy, charged respondent with, *inter alia,* making illegal gifts to Espy in violation of §201(c)(1)(A). That statute provides, in relevant part, that anyone who

> "otherwise than as provided by law for the proper discharge of official duty . . . directly or indirectly gives, offers, or promises anything of value to any public official, former public official, or person selected to be a public official, for or because of any official act performed or to be performed by such public official, former public official, or person selected to be a public official . . . shall be fined under this title or imprisoned for not more than two years, or both."

Count One of the indictment charged Sun-Diamond with giving Espy approximately $5,900 in illegal gratuities: tickets to the 1993 U. S. Open Tennis Tournament (worth $2,295), luggage ($2,427), meals ($665), and a framed print and crystal bowl ($524). The indictment alluded to two matters in which respondent had an interest in favorable treatment from the Secretary at the time it bestowed the gratuities. First, respondent's member cooperatives participated in the Market Promotion Plan (MPP), a grant program administered by the Department of Agriculture to promote the sale of U. S. farm commodities in foreign countries. The cooperatives belonged to trade organizations, such as the California Prune Board and the Raisin Administrative Committee, which submitted overseas marketing plans for their respective commodities. If their plans were approved by the Secretary of Agriculture, the trade organizations received funds to be used in defraying the foreign marketing expenses of their constituents. Each of respondent's member cooperatives was the largest mem-

ber of its respective trade organization, and each received significant MPP funding. Respondent was understandably concerned, then, when Congress in 1993 instructed the Secretary to promulgate regulations giving small-sized entities preference in obtaining MPP funds. Omnibus Budget Reconciliation Act of 1993, Pub. L. 103–66, § 1302(b)(2)(A), 107 Stat. 330–331. If the Secretary did not deem respondent's member cooperatives to be small-sized entities, there was a good chance they would no longer receive MPP grants. Thus, respondent had an interest in persuading the Secretary to adopt a regulatory definition of "small-sized entity" that would include its member cooperatives.

Second, respondent had an interest in the Federal Government's regulation of methyl bromide, a low-cost pesticide used by many individual growers in respondent's member cooperatives. In 1992, the Environmental Protection Agency announced plans to promulgate a rule to phase out the use of methyl bromide in the United States. The indictment alleged that respondent sought the Department of Agriculture's assistance in persuading the EPA to abandon its proposed rule altogether, or at least to mitigate its impact. In the latter event, respondent wanted the Department to fund research efforts to develop reliable alternatives to methyl bromide.

Although describing these two matters before the Secretary in which respondent had an interest, the indictment did not allege a specific connection between either of them— or between any other action of the Secretary—and the gratuities conferred. The District Court denied respondent's motion to dismiss Count One because of this omission. 941 F. Supp. 1262 (DC 1996). The court stated:

> "[T]o sustain a charge under the gratuity statute, it is not necessary for the indictment to allege a direct nexus between the value conferred to Secretary Espy by Sun-Diamond and an official act performed or to be performed by Secretary Espy. It is sufficient for the

indictment to allege that Sun-Diamond provided things of value to Secretary Espy because of his position." *Id.*, at 1265.

At trial, the District Court instructed the jury along these same lines. It read § 201(c)(1)(A) to the jury twice (along with the definition of "official act" from § 201(a)(3)), but then placed an expansive gloss on that statutory language, saying, among other things, that "[i]t is sufficient if Sun-Diamond provided Espy with unauthorized compensation simply because he held public office," and that "[t]he government need not prove that the alleged gratuity was linked to a specific or identifiable official act or any act at all." App. to Pet. for Cert. 85a, 87a. The jury convicted respondent on, *inter alia*, Count One (the only subject of this appeal), and the District Court sentenced respondent on this count to pay a fine of $400,000.*

The Court of Appeals reversed the conviction on Count One and remanded for a new trial, stating:

> "Given that the 'for or because of any official act' language in § 201(c)(1)(A) means what it says, the jury instructions invited the jury to convict on materially less evidence than the statute demands—evidence of gifts driven simply by Espy's official position." 138 F. 3d 961, 968 (CADC 1998).

In rejecting respondent's attack on the indictment, however, the court stated that the Government need not show that a gratuity was given "for or because of" any particular act or acts: "That an official has an abundance of relevant matters on his plate should not insulate him or his benefactors from the gratuity statute—as long as the jury is re-

_____

*Respondent was also sentenced to serve five years' probation on this and the other counts of which it stood convicted. Insofar as that element of the sentence was concerned, the Court of Appeals remanded for resentencing because the probation included impermissible reporting requirements. 138 F. 3d 961, 977 (CADC 1998). That issue is not before us.

quired to find the requisite intent to reward past favorable acts or to make future ones more likely." *Id.*, at 969.

We granted certiorari. 525 U. S. 961 (1998).

## II

Initially, it will be helpful to place §201(c)(1)(A) within the context of the statutory scheme. Subsection (a) of §201 sets forth definitions applicable to the section—including a definition of "official act," §201(a)(3). Subsections (b) and (c) then set forth, respectively, two separate crimes—or two pairs of crimes, if one counts the giving and receiving of unlawful gifts as separate crimes—with two different sets of elements and authorized punishments. The first crime, described in §201(b)(1) as to the giver, and §201(b)(2) as to the recipient, is bribery, which requires a showing that something of value was corruptly given, offered, or promised to a public official (as to the giver) or corruptly demanded, sought, received, accepted, or agreed to be received or accepted by a public official (as to the recipient) with intent, *inter alia*, "to influence any official act" (giver) or in return for "being influenced in the performance of any official act" (recipient). The second crime, defined in §201(c)(1)(A) as to the giver, and in §201(c)(1)(B) as to the recipient, is illegal gratuity, which requires a showing that something of value was given, offered, or promised to a public official (as to the giver), or demanded, sought, received, accepted, or agreed to be received or accepted by a public official (as to the recipient), "for or because of any official act performed or to be performed by such public official."

The distinguishing feature of each crime is its intent element. Bribery requires intent "to influence" an official act or "to be influenced" in an official act, while illegal gratuity requires only that the gratuity be given or accepted "for or because of" an official act. In other words, for bribery there must be a *quid pro quo*—a specific intent to give or receive something of value *in exchange* for an official

act. An illegal gratuity, on the other hand, may constitute merely a reward for some future act that the public official will take (and may already have determined to take), or for a past act that he has already taken. The punishments prescribed for the two offenses reflect their relative seriousness: Bribery may be punished by up to 15 years' imprisonment, a fine of $250,000 ($500,000 for organizations) or triple the value of the bribe, whichever is greater, and disqualification from holding government office. See 18 U. S. C. §§ 201(b) and 3571. Violation of the illegal gratuity statute, on the other hand, may be punished by up to two years' imprisonment and a fine of $250,000 ($500,000 for organizations). See §§ 201(c) and 3571.

The District Court's instructions in this case, in differentiating between a bribe and an illegal gratuity, correctly noted that only a bribe requires proof of a *quid pro quo*. The point in controversy here is that the instructions went on to suggest that § 201(c)(1)(A), unlike the bribery statute, did not require any connection between respondent's intent and a specific official act. It would be satisfied, according to the instructions, merely by a showing that respondent gave Secretary Espy a gratuity because of his official position— perhaps, for example, to build a reservoir of goodwill that might ultimately affect one or more of a multitude of unspecified acts, now and in the future. The United States, represented by the Independent Counsel, and the Solicitor General as *amicus curiae*, contend that this instruction was correct. The Independent Counsel asserts that "section 201(c)(1)(A) reaches any effort to buy favor or generalized goodwill from an official who either has been, is, or may at some unknown, unspecified later time, be *in a position to act* favorably to the giver's interests." Brief for United States 22 (emphasis added). The Solicitor General contends that § 201(c)(1)(A) requires only a showing that a "gift was motivated, at least in part, by the recipient's *capacity to exercise governmental power or influence* in the donor's favor" with-

out necessarily showing that it was connected to a particular official act.   Brief for United States Dept. of Justice as *Amicus Curiae* 17 (emphasis added).

In our view, this interpretation does not fit comfortably with the statutory text, which prohibits only gratuities given or received "for or because of *any official act* performed or to be performed" (emphasis added).   It seems to us that this means "for or because of some particular official act of whatever identity"—just as the question "Do you like any composer?" normally means "Do you like some particular composer?"   It is linguistically possible, of course, for the phrase to mean "for or because of official acts in general, without specification as to which one"—just as the question "Do you like any composer?" could mean "Do you like all composers, no matter what their names or music?"   But the former seems to us the more natural meaning, especially given the complex structure of the provision before us here.   Why go through the trouble of requiring that the gift be made "for or because of any official act performed or to be performed by such public official," and then defining "official act" (in § 201(a)(3)) to mean "any decision or action on any question, matter, cause, suit, proceeding or controversy, which may at any time be pending, or which may by law be brought before any public official, in such official's official capacity," when, if the Government's interpretation were correct, it would have sufficed to say "for or because of such official's ability to favor the donor in executing the functions of his office"?   The insistence upon an "official act," carefully defined, seems pregnant with the requirement that some particular official act be identified and proved.

Besides thinking that this is the more natural meaning of § 201(c)(1)(A), we are inclined to believe it correct because of the peculiar results that the Government's alternative reading would produce.   It would criminalize, for example, token gifts to the President based on his official position and not linked to any identifiable act—such as the replica

jerseys given by championship sports teams each year during ceremonial White House visits, see, *e. g.,* Gibson, Masters of the Game, Lexington Herald-Leader, Nov. 10, 1998, p. A1. Similarly, it would criminalize a high school principal's gift of a school baseball cap to the Secretary of Education, by reason of his office, on the occasion of the latter's visit to the school. That these examples are not fanciful is demonstrated by the fact that counsel for the United States maintained at oral argument that a group of farmers would violate § 201(c)(1)(A) by providing a complimentary lunch for the Secretary of Agriculture in conjunction with his speech to the farmers concerning various matters of USDA policy— so long as the Secretary had before him, or had in prospect, matters affecting the farmers. Tr. of Oral Arg. 26–27. Of course the Secretary of Agriculture *always* has before him or in prospect matters that affect farmers, just as the President always has before him or in prospect matters that affect college and professional sports, and the Secretary of Education matters that affect high schools.

It might be said in reply to this that the more narrow interpretation of the statute can also produce some peculiar results. In fact, in the above-given examples, the gifts could easily be regarded as having been conferred, not only because of the official's position as President or Secretary, but also (and perhaps principally) "for or because of" the official acts of receiving the sports teams at the White House, visiting the high school, and speaking to the farmers about USDA policy, respectively. The answer to this objection is that those actions—while they are assuredly "official acts" in some sense—are not "official acts" within the meaning of the statute, which, as we have noted, defines "official act" to mean "any decision or action on any question, matter, cause, suit, proceeding or controversy, which may at any time be pending, or which may by law be brought before any public official, in such official's official capacity, or in such official's place of trust or profit." 18 U. S. C. § 201(a)(3).

Thus, when the violation is linked to a particular "official act," it is possible to eliminate the absurdities *through the definition of that term.* When, however, no particular "official act" need be identified, and the giving of gifts by reason of the recipient's mere tenure in office constitutes a violation, nothing but the Government's discretion prevents the foregoing examples from being prosecuted.

The Government insists that its interpretation is the only one that gives effect to all of the statutory language. Specifically, it claims that the "official position" construction is the only way to give effect to § 201(c)(1)(A)'s forward-looking prohibition on gratuities to persons who have been selected to be public officials but have not yet taken office. Because, it contends, such individuals would not know of specific matters that would come before them, the only way to give this provision effect is to interpret "official act" to mean "official position." But we have no trouble envisioning the application of § 201(c)(1)(A) to a selectee for federal office under the more narrow interpretation. If, for instance, a large computer company that has planned to merge with another large computer company makes a gift to a person who has been chosen to be Assistant Attorney General for the Antitrust Division of the Department of Justice and who has publicly indicated his approval of the merger, it would be quite possible for a jury to find that the gift was made "for or because of" the person's anticipated decision, once he is in office, not to challenge the merger. The uncertainty of future action seems to us, in principle, no more an impediment to prosecution of a selectee with respect to some future official act than it is to prosecution of an officeholder with respect to some future official act.

Our refusal to read § 201(c)(1)(A) as a prohibition of gifts given by reason of the donee's office is supported by the fact that when Congress has wanted to adopt such a broadly prophylactic criminal prohibition upon gift giving, it has done so in a more precise and more administrable fashion. For

example, another provision of Chapter 11 of Title 18, the chapter entitled "Bribery, Graft, and Conflicts of Interest," criminalizes the giving or receiving of any "supplementation" of an Executive official's salary, without regard to the purpose of the payment. See 18 U. S. C. § 209(a). Other provisions of the same chapter make it a crime for a bank employee to give a bank examiner, and for a bank examiner to receive from a bank employee, "any loan or gratuity," again without regard to the purpose for which it is given. See §§ 212–213. A provision of the Labor Management Relations Act makes it a felony for an employer to give to a union representative, and for a union representative to receive from an employer, anything of value. 29 U. S. C. § 186 (1994 ed. and Supp. III). With clearly framed and easily administrable provisions such as these on the books imposing gift-giving and gift-receiving prohibitions specifically based upon the holding of office, it seems to us most implausible that Congress intended the language of the gratuity statute—"for or because of any official act performed or to be performed"—to pertain to the office rather than (as the language more naturally suggests) to *particular* official acts.

Finally, a narrow, rather than a sweeping, prohibition is more compatible with the fact that § 201(c)(1)(A) is merely one strand of an intricate web of regulations, both administrative and criminal, governing the acceptance of gifts and other self-enriching actions by public officials. For example, the provisions following § 201 in Chapter 11 of Title 18 make it a crime to give any compensation to a federal employee, or for the employee to receive compensation, in consideration of his representational assistance to anyone involved in a proceeding in which the United States has a direct and substantial interest, § 203; for a federal employee to act as "agent or attorney" for anyone prosecuting a claim against the United States, § 205(a)(1); for a federal employee to act as "agent or attorney" for anyone appearing before virtually any Government tribunal in connection with a matter in

which the United States has a direct and substantial interest, §205(a)(2); for various types of federal employees to engage in various activities after completion of their federal service, §207; for an Executive employee to participate in any decision or proceeding relating to a matter in which he has a financial interest, §208; for an employee of the Executive Branch or an independent agency to receive "any contribution to or supplementation of salary . . . from any source other than the Government of the United States," §209; and for a federal employee to accept a gift in connection with the "compromise, adjustment, or cancellation of any farm indebtedness," §217. A provision of the Internal Revenue Code makes it criminal for a federal employee to accept a gift for the "compromise, adjustment, or settlement of any charge or complaint" for violation of the revenue laws. 26 U. S. C. §7214(a)(9).

And the criminal statutes are merely the tip of the regulatory iceberg. In 5 U. S. C. §7353, which announces broadly that no "employee of the executive, legislative, or judicial branch shall solicit or accept anything of value from a person . . . whose interests may be substantially affected by the performance or nonperformance of the individual's official duties," §7353(a)(2), Congress has authorized the promulgation of ethical rules for each branch of the Federal Government, §7353(b)(1). Pursuant to that provision, each branch of Government regulates its employees' acceptance of gratuities in some fashion. See, e. g., 5 CFR §2635.202 et seq. (1999) (Executive employees); Rule XXXV of the Standing Rules of the Senate, Senate Manual, S. Doc. No. 104–1 (rev. July 18, 1995) (Senators and Senate Employees); Rule XXVI of the Rules of the House of Representatives, 106th Cong. (rev. Jan. 7, 1999) (Representatives and House employees); 1 Research Papers of the National Commission on Judicial Discipline & Removal, Code of Conduct for U. S. Judges, Canon 5(C)(4), pp. 925–927 (1993) (federal judges).

All of the regulations, and some of the statutes, described above contain exceptions for various kinds of gratuities given by various donors for various purposes. Many of those exceptions would be snares for the unwary, given that there are no exceptions to the broad prohibition that the Government claims is imposed by § 201(c)(1). In this regard it is interesting to consider the provisions of 5 CFR § 2635.202 (1999), issued by the Office of Government Ethics (OGE) and binding on all employees of the Executive Branch and independent agencies. The first subsection of that provision, entitled "General prohibitions," makes unlawful approximately (if not precisely) what the Government asserts § 201(c)(1)(B) makes unlawful: acceptance of a gift "[f]rom a prohibited source" (defined to include any person who "[h]as interests that may be substantially affected by performance or nonperformance of the employee's official duties," 5 CFR § 2635.203(d)(4) (1999)) or "[g]iven because of the employee's official position," § 2635.202(a)(2). The second subsection, entitled "Relationship to illegal gratuities statute," then provides:

> "Unless accepted in violation of paragraph (c)(1) of this section [banning acceptance of a gift 'in return for being influenced in the performance of an official act'], a gift accepted under the standards set forth in this subpart *shall not constitute an illegal gratuity otherwise prohibited by 18 U. S. C. § 201(c)(1)(B)*." § 2635.202(b) (emphasis added).

We are unaware of any law empowering OGE to decriminalize acts prohibited by Title 18 of the United States Code. Yet it is clear that many gifts "accepted under the standards set forth in [the relevant] subpart" *will* violate 18 U. S. C. § 201(c)(1)(B) if the interpretation that the Government urges upon us is accepted. The subpart includes, for example—as § 201(c)(1)(B) does not—exceptions for gifts of $20 or less, aggregating no more than $50 from a single

source in a calendar year, see 5 CFR § 2635.204(a) (1999), and for certain public-service or achievement awards and honorary degrees, see § 2635.204(d). We are frankly not sure that even our more narrow interpretation of 18 U. S. C. § 201(c)(1)(B) will cause OGE's assurance of nonviolation if the regulation is complied with to be entirely accurate; but the misdirection, if any, will be infinitely less.

More important for present purposes, however, this regulation, and the numerous other regulations and statutes littering this field, demonstrate that this is an area where precisely targeted prohibitions are commonplace, and where more general prohibitions have been qualified by numerous exceptions. Given that reality, a statute in this field that can linguistically be interpreted to be either a meat axe or a scalpel should reasonably be taken to be the latter. Absent a text that clearly requires it, we ought not expand this one piece of the regulatory puzzle so dramatically as to make many other pieces misfits. As discussed earlier, not only does the text here not require that result; its more natural reading forbids it.

## III

As an alternative means of preserving the jury's verdict on Count One, the Government contends that the District Court's mistaken instruction concerning the scope of § 201(c)(1)(A) constituted harmless error. As described earlier, the District Court twice read the text of §§ 201(c)(1)(A) and 201(a)(3), but it then incorrectly explained the meaning of that statutory language by essentially substituting the term "official position" for "official act." More specifically, the court instructed the jury as follows:

> "The essence of the crime is the official's position [as] the receiver of the payment not whether the official agrees to do anything in particular, that is, not whether the official agrees to do any particular official act in return. Therefore . . . to prove that a gratuity offense

has been committed, it is not necessary to show that the payment is intended for a particular matter then pending before the official. It is sufficient if the motivating factor for the payment is just to keep the official happy or to create a better relationship in general with the official.

.  .  .  .  .

"It is sufficient if Sun-Diamond provided Espy with unauthorized compensation simply because he held public office.

.  .  .  .  .

"In order for you to convict Sun-Diamond of violating the gratuity statute, you must find beyond a reasonable doubt that Sun-Diamond gave the gifts to Mr. Espy for or because of Mr. Espy's official government position and not solely for reasons of friendship or social purpose.

.  .  .  .  .

"With respect to official acts, the government has to prove that Sun-Diamond Growers of California gave knowingly and willingly Secretary Espy things of value while it had issues before the United States Department of Agriculture.

.  .  .  .  .

"Now, the government must prove that the gratuity was knowingly and willingly given for or because of an official act performed or to be performed by the Secretary of Agriculture, Michael Espy. That means that the government must prove that Sun-Diamond Growers of California . . . knowingly and willingly gave the gratuities, at least in part, because of the Secretary's position in appreciation of Sun-Diamond Growers of California's relationship with him as a public official or in anticipation of the continuation of its relationship with him as a public official. The government need not prove that the alleged gratuity was linked to a specific or identifiable

official act or any act at all." App. to Pet. for Cert. 84a–86a, 87a–88a.

The Government contends that the jury's verdict rendered pursuant to these instructions necessarily included a finding that respondent's gratuities were given and received "for or because of" an official act or acts. Upon closer examination, however, this argument is revealed to be nothing more than a restatement of the same flawed premise that permeated the instructions themselves and that we have just rejected: "By returning a guilty verdict, the jury necessarily rejected respondent's theory of defense and found beyond a reasonable doubt that the gifts were motivated by the fact that the Secretary of Agriculture exercised regulatory authority over respondent's business." Brief for United States 44. The Court of Appeals tersely rejected this claim of harmless error, 138 F. 3d, at 968, and we do the same.

\*　　\*　　\*

We hold that, in order to establish a violation of 18 U. S. C. § 201(c)(1)(A), the Government must prove a link between a thing of value conferred upon a public official and a specific "official act" for or because of which it was given. We affirm the judgment of the Court of Appeals, which remanded the case to the District Court for a new trial on Count One. Our decision today casts doubt upon the lower courts' resolution of respondent's challenge to the sufficiency of the indictment on Count One—an issue on which certiorari was neither sought nor granted. We leave it to the District Court to determine whether that issue should be reopened on remand.

*It is so ordered.*