WIENER, Circuit Judge,
concurring in part, dissenting in part:
Although I concur in the panel majority’s holding that the district court did not abuse its discretion as to the supplemental jury instruction, I must respectfully dissent from the panel majority’s affirmance of Valle’s bribery conviction. I do so because I am convinced that (1) 18 U.S.C. § 201(b)(2)(C) requires the government to prove beyond a reasonable doubt that the offending government official had the specific intent to provide a quid pro quo, viz., that he actually intended to be influenced in the performance of, or induced to take, an official act in exchange for money, and (2) the government failed to prove that Valle had the required specific intent to remove criminal charges against Gutierrez. I shall demonstrate that (1) it was a legal and factual impossibility for Valle to perform the official act that he “conveyed” to Gutierrez he would perform in consideration for the funds that he solicited and received from Gutierrez, and (2) Valle was aware of this impossibility at all relevant times. This, in turn, made it equally im *349 possible for Valle to have formed the requisite specific intent to commit bribery and thus legally impossible for the government to have borne its burden of proof on the intent element of bribery.
All agree that, to sustain a bribery conviction under § 201(b)(2)(C), the government must prove that the public official “conveyed” to the potential bribe-giver that, in return for money, the officer would perform or refrain from performing a specific act in violation of his official duty. The panel majority would make that the end of the inquiry, at least as far as the public official is concerned. I am convinced that an additional showing is required; namely, that — at the times he agrees to the deal and accepts the funds— the public official must have the specific intent to follow through with the promised act or omission.
I do not dispute the panel majority’s conclusion that, when read in a vacuum, the statutory language of § 201(b)(2)(C) is ambiguous. The panel majority correctly observes that the language of the statute does not require that the public official actually commit the violation of his official duty; but neither does it state that the official’s mere promise to do or omit a specific act in violation of his official duty in exchange for money is sufficient to sustain a bribery conviction. Accordingly, I agree that, based on the text of § 201(b)(2)(C) alone, it is unclear whether, on the one hand, the offending public official must specifically intend to be induced to perform or not perform an official act as a quid pro quo for the money, or, on the other hand, it is sufficient that he corruptly demand something of value while merely conveying to the bribe-giver that he would be so induced.
My fundamental disagreement with the panel majority lies in its cursory dismissal of the pellucid pronouncements of the Supreme Court in Sum-Diamond regarding the public official’s required specific intent to receive something of value as consideration for performing or not performing an official act that constitutes a quid pro quo for the money. Even though Sum-Diamond was a gratuity case, the Supreme Court saw fit to address the subject bribery statute in detail, stating that “[bjribery requires intent ‘to influence’ an official act [the bribe-giver] or ‘to be influenced’ in an official act [the public official/bribe-receiver].... In other words, for bribery there must be a quid pro quo — a specific intent to give or receive something of value in exchange for an official act.”[1] Inasmuch as the Supreme Court plainly stated that bribery under § 201(b)(2) requires that the public official intend to be influenced in an official act — and I cannot discern any material difference between Congress’s use of “influenced” in § 201(b)(2)(A) and its use of “induced” in § 201(b)(2)(C) — I must take issue with the panel majority’s statement that “[n]othing in Sun-Diamond suggests that a conviction under § 201(b)(2) requires that an official intend to commit an official act, or violation of his duty-” For, Sun-Diamond does not merely suggest that the public official’s specific intent is required under § 201(b)(2)(C); it fundamentally alters the statutory framework to make such intent an element of the crime. Sum-Diamond, in effect, judicially amended § 201(b)(2)(C), removing any ambiguity regarding the requisite showing of the public official’s intent and thereby proscribing the panel majority’s resort to legislative history.
*350 Furthermore, Myers and the subject case are factually distinguishable and at least partially reconcilable: The Congressman in Myers had the legal authority and actual ability to take the official action that he conveyed to the bribe-giver the intention to take and for which the Congressman received the money; in stark contrast, Valle possessed neither the legal means nor the actual ability to dismiss criminal charges against Gutierrez, regardless of having conveyed his intention to do so to Gutierrez. This is because, factually, there were no charges either pending against Gutierrez or being contemplated when Valle made his promise; and, legally, Valle did not even work in the criminal arena. Accordingly, Valle had no legal authority or actual ability to remove the putative charges. It is apparent, then, that, in contrast to the Congressman in Myers, Valle could not possibly have formed the requisite specific intent to be influenced in, or induced to take, the official act that he conveyed to Gutierrez would be taken. Absent both the actual and legal ability to deliver on his promise, Valle could never have specifically intended to deliver the quid pro quo required by Sum-Diamond as consideration for the money he sought and received from Gutierrez.
Given these material distinctions between this case and Myers, together with the fact that Myers preceded Sun-Diamond by almost twenty years, we would not create a circuit split with the Second Circuit by reaching the result I advocate. In Myers, all that the Second Circuit did was to reject self-serving, purely subjective and unsupported statements by the Congressman that he never had the intention to perform the quid pro quo for the money. In so doing, the Myers Court relied on the fact that the Congressman was actually and legally able to perform the conveyed official act if he had so chosen. Both the Congressman in Myers and Valle here conveyed to the bribe-givers what they, as officials, would do for the money; and, like the Second Circuit, we may totally disregard Valle’s self-serving, subjective statement about collecting a debt that Gutierrez owed to a third party. The significant difference that distinguishes this case from Myers — and avoids a circuit split — is that the Congressman was legally and actually able to do what he promised, but Valle was not.
The panel majority nevertheless posits that Valle was capable of violating his duty in the manner that he promised because of his status as a classification officer with Immigration and Customs Enforcement, which afforded him access to alien registration and detention files and provided him with the authority to gather intelligence concerning possible criminal violations. As noted above, I respectfully reject the panel majority’s assertion that these facts vested Valle with the legal authority to remove criminal charges, especially considering that the El Paso Processing Center, where he worked, handled only administrative aspects of the aliens’ detention.
This point of dispute need not be resolved, however, because it was factually impossible for Valle to remove criminal charges against Gutierrez for the obvious reason that no charges were ever filed and none were even contemplated! As noted by the panel majority, before Valle ever proposed the transaction, the Assistant U.S. Attorney had declined to bring charges against Gutierrez for alien smuggling. Inasmuch as (1) there were no charges pending or even contemplated against Gutierrez, and (2) Valle was fully aware that no charges were pending or would ever be brought, it was impossible for him to have formed the requisite specific intent to be influenced in, or induced *351 to take, a specific act, viz., removal of criminal charges, in violation of his official duty. Stated differently, it was an objectively logical impossibility for Valle to have formed the specific intent to deliver on his part of Sun-Diamond’s indispensable element of a quid pro quo.
In dissenting, I do not question — and in fact advocate — the importance and necessity of using objective indicia to determine the public official’s subjective intent; and I acknowledge that, in most circumstances, the official’s conveyed intention and his legal and actual authority to do or omit an act will coincide to support a finding of specific intent. The discrete circumstances of Valle’s case are exceptional, however: The record plainly eliminates any doubt about whether there were charges pending or under consideration against Gutierrez at the time Valle promised to remove them. Rather than speculate as to whether it was plausible that charges against Gutierrez could be filed in the future and that Valle’s promise actually pertained to the removal of these potential charges, the correct course of action is to evaluate the objective realities at the time or times that Valle conveyed his intention to remove the putative charges and accepted the money from Gutierrez. This evidence shows that, irrespective of Valle’s legal authority, he could not conceivably have formed the requisite specific intent, per Sun-Diamond, to remove criminal charges against Gutierrez and violate any of his official duties as a classification officer.
Finally, I briefly address the Seventh Circuit’s decision in United States v. Arroyo,[2] which — like the Second Circuit’s decision in Myers — was rendered approximately twenty years before Sum-Diamond. In Arroyo, the defendants (who were public officials) sought to extort money from an applicant for a federal loan, by representing that they were still processing his application when in fact they had already approved it. The defendants challenged their bribery convictions under § 201 based on the fact that their corrupt solicitation occurred after they had already performed their official actions. They argued that they could not have formed the specific intent to be influenced in, or induced to take, an official act that had already been performed. A panel majority of the Seventh Circuit rejected their defense and held — based on its interpretation of the statutory language of § 201 — that the statute was not limited to solicitations occurring before the actual performance of an official act. The dissent, however, concluded that § 201 requires that a public official specifically intend to permit himself to be influenced in an official act. Moreover, reasoned the dissent, defendant Arroyo could not possibly have had the requisite intent necessary for a conviction because his part in the decision-making process had been completed by the time the corrupt solicitation was made. The government would liken the instant case to Arroyo because the panel majority in that case effectively rejected the defendants’ impossibility defense and focused only on whether the public official’s demand was made corruptly, rather than also considering whether the official actually intended to be influenced in the performance of an official act. When Arroyo is viewed in the light of the Supreme Court’s superseding pronouncements in Sun-Diamond regarding the public official’s requisite specific intent actually to deliver a quid pro quo, which pronouncements judicially amended § 201, the panel majority’s decision in Arroyo is plainly obsolete and thus inapposite.
*352 The proof of the pudding lies in the contrast between the two crimes for which Valle was convicted — bribery and extortion. Valle’s actions were no doubt criminal, and — on precisely the same set of facts — he was appropriately convicted of extortion under 18 U.S.C. § 872. But, the difference in the intent elements of bribery and extortion is precisely what makes Valle’s conviction for extortion proper and his bribery conviction reversible error. Simply put, the government overreached in charging Valle with bribery under § 201(b)(2)(C), as the evidence was plainly insufficient to prove beyond a reasonable doubt that he had the specific intent to be influenced in the performance of, or induced to do or omit, an official act that was actually and legally impossible for him to perform, and thus legally impossible for him to intend to perform. This is why I must respectfully dissent in part.

. United. States v. Sun-Diamond Growers, 526 U.S. 398, 404-05, 119 S.Ct. 1402, 143 L.Ed.2d 576 (1999).

. 581 F.2d 649 (7th Cir.1978).