# United States Court of Appeals
**FOR THE DISTRICT OF COLUMBIA CIRCUIT**

Argued September 17, 2010          Decided January 7, 2011

No. 09-3070

UNITED STATES OF AMERICA,
APPELLEE

v.

IKELA MARCEA DEAN,
APPELLANT

Appeal from the United States District Court
for the District of Columbia
(No. 1:08-cr-00005)

*Tony Axam Jr.*, Assistant Federal Public Defender, argued the cause for appellant. With him on the briefs was *A. J. Kramer*, Federal Public Defender. *Neil H. Jaffee*, Assistant Federal Public Defender, entered an appearance.

*Peter S. Smith*, Assistant U.S. Attorney, argued the cause for appellee. With him on the brief were *Ronald C. Machen Jr.*, U.S. Attorney, and *Roy W. McLeese III* and *John P. Mannarino*, Assistant U.S. Attorneys.

Before: SENTELLE, *Chief Judge*, TATEL and BROWN, *Circuit Judges*.

Opinion for the Court filed by *Chief Judge* SENTELLE.

SENTELLE, *Chief Judge*: Ikela Dean appeals her convictions for one count of bribery and one count of extortion. She argues that there was insufficient evidence presented at trial to support the convictions. We agree and reverse.

## Background

Appellant Ikela Dean was indicted in 2008 on fourteen counts of bribery and extortion, and tried before a jury. At trial the government put forth evidence of the following events: During 2007 Dean was employed by the District of Columbia Department of Consumer and Regulatory Affairs (hereinafter D.C. or DCRA) as a contact representative. Her responsibilities included reviewing and processing various license applications, for example, licenses needed by establishments for their elevators. During the summer of 2007 Dean carried out a scheme whereby she informed establishments seeking past due renewal of their elevator licenses that the fee for the elevator license itself could be paid by check, but that any additional late fees had to be paid in cash. Dean submitted the checks for the licenses to the District of Columbia but kept for herself the cash submitted as payment for the late fees. After seven successful iterations of the scheme, Dean attempted an eighth with respect to licenses of the Omni Shoreham Hotel. An employee of the Omni became suspicious of the cash request and contacted the Federal Bureau of Investigation (FBI).

The FBI set up a sting operation wherein a representative from the Omni (hereinafter "undercover agent"), acting on instructions from the FBI, contacted Dean and informed her that in addition to the licenses for its elevators the Omni also was in need of a license for a cigar bar/billiards hall within the hotel. This cigar bar/billiards hall was in fact non-existent and

fabricated only to test Dean. Dean informed the undercover agent that the pool tables in the billiards hall would need their own license, and after the agent informed Dean that there were five pool tables, Dean told him that the total licensing fee for the pool tables amounted to $1275. Dean also told him that the license for the cigar bar/billiards hall itself could be paid by check but that the license for the pool tables had to be paid in cash since those fees were late. After being given the $1275 in cash Dean was arrested.

After the government rested its case Dean's attorney moved for judgment of acquittal on each count of the indictment, arguing that the government's evidence did not prove that Dean had committed either bribery or extortion. The trial judge granted the motion on twelve of the fourteen counts, noting that both bribery and extortion presuppose a *quid pro quo*, i.e., Dean's taking of the money had to be in return for the performance of an official act. The judge stated that the late fees at issue in those twelve counts, collected by Dean in cash and kept by her, were in fact owed to the city by the license applicants. Therefore, while the evidence might have supported charges of embezzling or stealing from the city, she had not committed bribery or extortion. The trial judge denied the motion with respect to the remaining one count of bribery and one count of extortion concerning the pool tables at the Omni, stating that those two counts were distinct from the other counts because the pool tables were non-existent and therefore the $1275 given to Dean for their licenses was not in fact owed to the city.

Dean was subsequently found guilty on the two remaining counts of bribery and extortion and sentenced to prison. She appeals, arguing, *inter alia*, that her convictions on those two counts should be reversed because the evidence was insufficient to establish that she committed either bribery or extortion.

4

**Analysis**

Dean was convicted of bribery pursuant to 18 U.S.C. § 201(b)(2)(A), which provides that a public official commits bribery when that official "directly or indirectly, corruptly demands, seeks, receives, accepts, or agrees to receive or accept anything of value personally or for any other person or entity, in return for . . . being influenced in the performance of any official act." In *United States v. Sun-Diamond Growers of California*, 526 U.S. 398, 404-05 (1999), the Supreme Court noted that under this statutory provision, "for bribery there must be a *quid pro quo*—a specific intent to give or receive something of value *in exchange* for an official act." Dean argues that her plan to keep the $1275 was not part of a *quid pro quo* for issuing the cigar bar/billiards hall license. In support of this argument, Dean claims that there was no evidence that she received the money in exchange for being influenced in the official act of issuing the license, i.e., she offered no pretense and made no suggestion that the payment was to be made personally to her in exchange for favorably processing the license. In short, Dean asserts that she did not commit bribery because the transaction did not involve an illicit benefit in exchange for favorable treatment for the Omni. The government, on the other hand, argues that Dean's keeping of the $1275 cash payment in exchange for processing and issuing the license indeed constituted a *quid pro quo*, and therefore Dean is guilty of bribery. In support of this argument, the government quotes *United States v. Orenuga*, that "a bribe is consummated when the defendant accepts money with the *specific intent* of performing an official act in return." 430 F.3d 1158, 1166 (D.C. Cir. 2005) (quotation omitted). The government contends that the evidence here showed that Dean accepted the $1275 with the intent to perform the official acts of processing and issuing a license for the Omni's fictitious pool tables.

Dean was also convicted of extortion pursuant to 18 U.S.C. § 1951, which prohibits "in any way or degree obstruct[ing], delay[ing], or affect[ing] commerce . . . by robbery or extortion," and which states that "[t]he term 'extortion' means the obtaining of property from another, with his consent, induced by wrongful use of actual or threatened force, violence, or fear, or under color of official right." Although the crime of extortion can be committed in a variety of ways, *see* James Lindgren, *The Elusive Distinction Between Bribery and Extortion: From the Common Law to the Hobbs Act*, 35 U.C.L.A. L. Rev. 815 (1988), the government's extortion theory here is essentially the same as its bribery theory—i.e., that Dean entered into an illicit *quid pro quo* under which she would issue pool-table licenses to the Omni in return for a $1275 cash payment. As the government notes, the Supreme Court has stated that a public official is guilty of extortion when he "obtain[s] a payment to which he [is] not entitled, knowing that the payment [is] made in return for official acts." *Evans v. United States*, 504 U.S. 255, 268 (1992). The problem with the government's argument, however, is that the Supreme Court has also indicated that a *quid pro quo* necessitates an *agreement* between the public official and the other party that the official will perform an official act in return for a personal benefit to the official. *See id.* If, for example, Dean had said to the undercover agent "you owe $1275 for the pool table license to the city and $300 to me for making it happen without delay," that would be evidence of the crimes charged. However, the only agreement supported by the evidence was one between Dean and the undercover agent that he would pay a fee to D.C. for a license for pool tables. There was no agreement between the parties that the $1275 was for Dean personally. She accepted the money ostensibly on behalf of the DCRA with every indication that the fee was required for the pool tables. Furthermore, we see nothing in the record to suggest that the Omni expected favorable processing of the license or that Dean

agreed to provide favorable processing.

The government contends that the evidence showed that Dean accepted the $1275 with the intent to perform the official acts of processing and issuing a license for the Omni's fictitious pool tables. But this situation described by the government is repeated every day in government offices when a public official receives payment for a licensing fee and issues a license in the normal course of business, e.g., when a person goes to the state agency which processes drivers' licenses and pays a fee to get a license. The official is receiving the fee on behalf of the government office, just as Dean did in accepting the $1275 on behalf of the DCRA. But, argues the government, the evidence established that Dean intended to keep the $1275. While this is true, the fact remains that the agreement was for Dean to accept the $1275 on behalf of the DCRA. There is no evidence of an agreement between her and the undercover agent that the money was to go to her personally.

The government's reliance on this court's statement in *Orenuga*, that "a bribe is consummated when the defendant accepts money with the specific intent of performing an official act in return" is misplaced. 430 F.3d at 1166 (quotation and emphasis omitted). In that case we responded to a challenge of a jury instruction by noting the gravamen of bribery is "taking or agreeing to take money for a promise to act in a certain way." *Id.* (quotations omitted). In other words, the *quid pro quo* need not be "fully executed for the act to be considered a bribe." *Id.* In any event, *Orenuga* is a very different case than this one in that in *Orenuga* there was an agreement between the parties that the defendant would be given money personally for an official act. *Id.* at 1160-61. Here, in contrast, there was no such agreement between the Omni and Dean.

Also misplaced is the government's reliance on the Supreme Court's statement in *Evans* that the *quid pro quo* requirement is satisfied where it is established that "a public official has obtained a payment to which he was not entitled, knowing that the payment was made in return for official acts." 504 U.S. at 268. The question in *Evans* was "whether an affirmative act of inducement by a public official, such as a demand, is an element of the offense of extortion" prohibited by 18 U.S.C. § 1951. *Id.* at 256. The statement relied upon by the government was nothing more than an answer by the Court to that question. *Id.* at 268. In any event, the paragraph containing that statement begins with the Court noting that the *quid pro quo* requirement is satisfied "at the time when the public official receives a payment in return for his *agreement* to perform specific official acts . . . ." *Id.* (emphasis added). The point, as we have already noted, is that there must be an agreement between the public official and the other party that the official will perform an official act in return for a personal benefit to the official. Here there was no such agreement between Dean and the undercover agent. Dean represented that she was accepting the $1275 on behalf of the DCRA.

The government argues that even though there may not have been an overt agreement between Dean and the Omni concerning the $1275, the jury could have inferred that she was issuing the license in exchange for a personal benefit. But a review of the transcript of the recorded conversation between Dean and the undercover agent shows that Dean stated to the agent that there were five pool tables so the license would cost $1275, and furthermore because it was late, it had to be in cash. Dean represented that the money was going to D.C., not to her. We see nothing in the record wherein Dean suggested to the agent that the money was going into her pocket. We therefore agree with Dean that there were no words or actions by her from which a rational juror could infer that she was requiring a cash

payment in exchange for being influenced to issue the license.

Finally, the government argues that since this was a sting operation it was clear that neither Dean nor the DCRA were due any late fees in connection with the Omni's request to license the five pool tables. But the sting operation was what the government was doing, not what Dean was doing. Dean was still representing that she was accepting money on behalf of D.C. and the fact that D.C. received money to license fictitious pool tables doesn't change anything—the money was still purportedly coming in for D.C.

We are not holding that the evidence against Dean did not support a conclusion that she committed criminal activity. However, that is not the question in this or any other case under the American justice system. The question is whether the evidence is sufficient to support the crime charged. The evidence was that Dean received money from licensees under false pretenses and took money that belonged to her employer. We do not know why the United States Attorneys' Office did not choose to seek an indictment for fraud or embezzlement under Title 22, Chapter 32 of the District of Columbia Code. It would appear that the evidence might easily have supported such charges. However, for whatever reason, the prosecutor sought and obtained an indictment for an offense not supported by the evidence. This was true with respect to all of the charges rightly dismissed by the trial court, as well as the two that made it through to us.

### Conclusion

We conclude that there was insufficient evidence to convict Dean of either bribery or extortion as charged in the indictment because the evidence showed no *quid pro quo* necessary to convict on either charge. We echo the sentiments of the trial

judge who opined that the government mis-charged in this case; Dean may well be guilty of embezzlement or fraud, but not extortion or bribery as charged.  The judgment of conviction is reversed.