In the

# United States Court of Appeals

## For the Seventh Circuit

No. 05-1287

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*v.*

CARL A. GEE,

*Defendant-Appellant.*

Appeal from the United States District Court
for the Eastern District of Wisconsin.
No. 03-CR-259—**Rudolph T. Randa**, *Chief Judge.*

ARGUED DECEMBER 7, 2005—DECIDED DECEMBER 23, 2005

Before EASTERBROOK, MANION, and SYKES, *Circuit Judges.*

EASTERBROOK, *Circuit Judge.* Opportunities Industrialization Center of Greater Milwaukee (OIC)—an organization affiliated with the self-help movement founded in 1964 by Rev. Leon H. Sullivan in Philadelphia—holds contracts to administer Wisconsin's welfare-reform program, popularly known as W-2 (for "Wisconsin Works"). These contracts bring in about $40 million annually, approximately two-thirds of OIC's revenue. A jury concluded in this criminal prosecution that Carl Gee had conspired with Gary George and Mark Sostarich to obtain these contracts corruptly. Gee caused OIC to pay kickbacks to George, who at the time was the majority leader of Wisconsin's state

senate. The kickbacks violated 18 U.S.C. §666 because OIC receives more than $10,000 annually in federal grants (W-2 is itself about 80% federal money), and the agreement among Gee, George, and Sostarich to violate §666 in turn violated 18 U.S.C. §371, the general conspiracy statute. Gee has been sentenced to 24 months' imprisonment and ordered to pay restitution of some $473,000. George pleaded guilty to the §371 charge, and we have affirmed his conviction and sentence of 48 months' imprisonment, though we directed the district court to revisit George's obligation to make restitution. See *United States v. George*, 403 F.3d 470 (7th Cir. 2005). Sostarich pleaded guilty to a different conspiracy with George, agreed to cooperate (he testified against Gee), and was sentenced to make restitution, serve home confinement but no imprisonment, and perform community service; he did not appeal.

The evidence permitted a jury to find that Gee caused OIC to pay George for his assistance in directing the welfare-program-management contracts to OIC and preventing the state from auditing OIC's performance. Money passed from OIC to George in two ways. First, OIC gave Sostarich a monthly retainer, 80% of which he made over to George (often after one of George's aides picked up the check from OIC, delivered it to Sostarich, and waited while he made out a personal check to George for his cut). George never performed any legal work in exchange for this money; neither OIC nor Sostarich filed tax documents showing how the monthly fee had been divvied up. Second, OIC "invested" $200,000 of an affiliate's money in a corporation, controlled by George's family, whose sole asset was a TV station in the Virgin Islands. Although Gee told the affiliate that it would receive 20% of the corporation's stock, no certificates were issued and the "investment" never appeared on the corporation's books. The money seems to have gone straight to George's pocket, with OIC receiving his goodwill and political patronage rather than an equity interest in a business.

Gee contends that this evidence does not support the conviction. He offers three principal arguments. One is that the $200,000 came from OIC's profits and bonuses for administering the W-2 program rather than from any federal grant. This argument supposes that §666 reaches only funds that can be traced directly to the grant. The Supreme Court rejected an identical argument in *Sabri v. United States*, 541 U.S. 600 (2004), as we had done earlier in *United States v. Grossi*, 143 F.3d 348 (7th Cir. 1998). Gee never mentions either of these decisions.

Another argument is that the evidence does not establish any specific act that George took in response to any specific payment. Gee contends that the absence of a *quid pro quo* prevents conviction. Yet the statute does not require any such link. A *quid pro quo* of money for a specific legislative act is *sufficient* to violate the statute, but it is not *necessary*. It is enough if someone "corruptly solicits or demands for the benefit of any person, or accepts or agrees to accept, anything of value from any person, intending to be influenced or rewarded in connection with any business, transaction, or series of transactions of such organization, government, or agency involving any thing of value of $5,000 or more". 18 U.S.C. §666(a)(1)(B). A sensible jury could conclude that George had this corrupt intent, and that Gee and Sostarich conspired with George to carry out a plan in which federal money in OIC's hands was exchanged for George's influence. See *United States v. Agostino*, 132 F.3d 1183, 1190 (7th Cir. 1997).

Finally, Gee observes that George was in the legislative rather than the executive branch of Wisconsin's government, which awarded W-2 contracts, and contends that he therefore "had no power or authority to influence; he did nothing to 'merit' a reward." This confuses influence with power to act unilaterally. A legislator with the ability to control the senate's agenda can throw a monkey wrench into a Governor's program, and this power confers influence

over executive decisions even when the legislature does not pass any particular law. The absence of new laws may show the successful application of influence. One does not need to live in Chicago to know that a job description is not a complete measure of clout. The evidence permitted a reasonable jury to find that George had plenty of clout and used it to OIC's benefit, for which he was well paid.

Gee does not contest the length of his prison sentence but does complain about the restitution. The principal problem that led to the remand in *George* was our inability to discern what the award represents. Here, as in *George*, the district judge failed to explain his decision; but this time it is easy to see where the numbers come from. The award equals $200,000 (the "investment" in George's business) plus 80% of Sostarich's retainer. That's exactly what the victim lost and thus is an appropriate award under 18 U.S.C. §3663A. Although *George* notes that the victim in a prosecution under §371 is the United States, OIC is a proxy for the federal interest because it was a recipient of federal funds that were designated for a particular use. Restoring this money to OIC will enable it to carry out the federal and state welfare programs with the full resources that the contracts provided originally. Sostarich actually provided legal services, but he was willing to do this for only 20% of the retainer. Had funds not been diverted to George, OIC could have saved the difference. It is entitled to restitution of that difference, and its entitlement to a return of the $200,000 is straightforward.

AFFIRMED

No. 05-1287 5

A true Copy:

Teste:

_____
*Clerk of the United States Court of*
*Appeals for the Seventh Circuit*