

2008 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

5-22-2008

# USA v. O'Grady

Precedential or Non-Precedential: Non-Precedential

Docket No. 06-4498

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2008

Recommended Citation

"USA v. O'Grady" (2008). *2008 Decisions.* Paper 1161.
http://digitalcommons.law.villanova.edu/thirdcircuit_2008/1161

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova University School of Law Digital Repository. It has been accepted for inclusion in 2008 Decisions by an authorized administrator of Villanova University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

No. 06-4498

UNITED STATES OF AMERICA

v.

RAYMOND O'GRADY

Appellant

On Appeal from the United States District Court
for the District of New Jersey
(D. C. No. 05-cr-00825-1)
District Judge: Hon. William J. Martini

Submitted under Third Circuit LAR 34.1(a)
on March 4, 2008

Before: SCIRICA, Chief Judge, FISHER and ROTH, Circuit Judges

(Opinion filed: May 22, 2008)

O P I N I O N

**ROTH,** <u>Circuit Judge</u>:

A jury found Raymond J. O'Grady guilty of two counts of extortion under color of official right, one count of conspiring to commit extortion under color of official right, and two counts of bribery. The District Court sentenced O'Grady to 43 months imprisonment and imposed a $5,000 fine. O'Grady appeals his conviction, contending that (1) the government failed to prove guilt beyond a reasonable doubt and the jury's verdict was against the reasonable weight of the evidence, (2) inadmissible testimony was admitted at trial, (3) the trial court denied his Sixth Amendment right to confrontation, (4) the trial court erred by interrupting his cross-examination of a witness, (5) the trial court erred by failing to excuse a juror, (6) the trial court erred by allowing the deliberating jury to have transcripts of audio and video recordings played during the trial, and (7) the jury charges were misleading and confusing. Finding no error, we will affirm.

## I. **BACKGROUND**

Defendant Raymond J. O'Grady served as a Township Commiteeman for the Township of Middletown, New Jersey. As a Committeeman O'Grady had been appointed by charter and served as mayor for various calendar years. Although it did not occur, O'Grady indicated to others his expectation that he would be appointed mayor again in 2005. During his time as a Committeeman, the Federal Bureau of Investigation (FBI) conducted "Operation Bid Rig"–an investigation designed to uncover political corruption. Two FBI

agents held themselves out as employees of a business involved in construction and demolition work. These agents made it known they were interested in paying bribes to local officials who were in a position to award no-bid emergency contracts. Anthony Palughi, serving as the Superintendent of Bridges for Monmouth County, introduced the undercover agents to O'Grady. At the time, Palughi was not aware of the investigation. After his arrest in December 2004, Palughi agreed to become a cooperating witness and recorded conversations with O'Grady in that capacity.

The agents, and later Palughi, audio and video recorded various meetings with O'Grady. The parties are familiar with the contents of these recordings. Because we write primarily for their benefit, we omit any discussion of facts not relevant to our discussion. During deliberations, the District Court gave the jury transcripts of the recorded conversations that had been admitted into evidence and played for the jury during trial. No tape player was provided to the jury, but the District Court informed the jury that the recordings would be available upon request and also repeatedly cautioned the jury to rely on the recordings if they conflicted with the transcripts.

On October 15, 2004, O'Grady met the undercover agents for lunch. The agents indicated that "[t]he boss . . . knows you're helping us do things. . . . he also knows you're influential and . . . that what, in January, you're gonna become the mayor. . . . And he knows you're gonna look out for our best interests." After O'Grady responded "I could possibly help you out," the agents told O'Grady to stop by their office for "a little early Christmas gift

3

or whatever." O'Grady also claimed he could "smell a cop a mile away" and that he "didn't talk out in the open." On October 21, O'Grady stopped by the office to pick up the "early Christmas gift." A videotape shows one undercover agent telling O'Grady "we're looking for stuff under the emergency threshold" and that the undercover cop handed O'Grady a white envelope while saying "the boss wanted to do a little taking care of you." The envelope contained $1,000 in cash. The agent testified that "looking for stuff under the emergency threshold" meant "obtaining no-bid contracts for us once he became Mayor, or using his position as Committeeman to help get those contracts[.]"

On February 17, 2005, the undercover agents met with O'Grady at a restaurant. A videotape shows an undercover agent handing O'Grady a white envelope while he said "that's the five from [the boss]." The agent testified that the envelope contained $5,000 in cash. During this meeting, O'Grady warned the agents that "you guys are hot" and advised the agents "[t]here are some great words in this world. I do not recollect I can not remember. . . . They can't get you for perjury or false statements or anything like that for anything you can't remember or can not recollect." The undercover agent testified that he understood the warning "you guys are hot" to mean that "law enforcement is taking an interest or looking into our activities."

From 1990 until 2004, O'Grady also served as the Director of the Monmouth County Motor Pool. In this capacity, O'Grady was responsible for repairing all county vehicles and for ordering needed parts. Matthew and Stephen Appolonia owned International Trucks of

4

Central Jersey (ITCJ). O'Grady purchased trucks parts from and sent trucks to be repaired by ITCJ. Beginning as early as 2001, O'Grady directly, and indirectly through Palughi, received corrupt cash payments from ITCJ. O'Grady utilized his position and authority to order unnecessary equipment and supplies and caused the approval of inflated costs or false charges from ITCJ in order to offset the corrupt payments made to O'Grady. On February 9, 2005, O'Grady advised Palughi he was "distancing" himself from the Appolonias "just in case anybody is watching" but indicated he would "reestablish" the relationship later.

At trial, Palughi testified that between October and December 2004, O'Grady caused the generation of a backdated voucher for $6,000 from the County of Monmouth to ITCJ so that Monmouth County would pay for the repair of a vehicle Monmouth County had traded back to ITCJ. In fact, the county did not own the vehicle at the time of the repair. In exchange, O'Grady accepted $2,000 in cash, giving $700 to Palughi. O'Grady later shredded the voucher because he feared an investigation. O'Grady told Palughi "[t]he only thing that, that anybody in this mix knows about our [expletive] dealings, was that one invoice" and warned Palughi to be careful of what he said.

During O'Grady's trial, on June 2, 2006, prior to the second day of cooperating witness Palughi's direct examination, Palughi attempted suicide by taking an overdose of blood pressure medication. At the hospital, Palughi was examined by the hospital psychiatrist, Dr. Schwartzman. In a psychiatric report dated June 5, the doctor told the district judge that in her opinion, Palughi "seems to have the capacity to testify immediately

5

after his discharge from the hospital today."[1]  Palughi continued to testify on June 6. O'Grady received a copy of the psychiatric report and the District Court released Palughi's hospital records.  The District Court repeatedly denied O'Grady's request for a Fed. R. Evid. 104 hearing on competency.  After reviewing Dr. Schwartzman's report, the District Court found nothing in it to require further psychiatric examination.  O'Grady's counsel was allowed to cross-examine Palughi on the suicide attempt.  During cross examination, counsel asked Palughi "isn't it a fact that amongst the reasons you attempted to take your life was because you were feeling guilty about what you were doing here in this courtroom?" and Palughi responded "[a]bsolutely, sir."  Defense counsel later used this testimony to attack Palughi's reliability, asking the jury to believe that Palughi would lie to keep himself out of jail.

During defense counsel's cross examination of Palughi, the District Court interrupted to instruct counsel to rephrase a question and warn counsel not to be argumentative or repetitive, to ask Palughi a series of questions relating to his job appointments, and to chastise counsel in front of the jury for characterizing the witness's answers and ordering

---

[1]Dr. Schwartzman noted that "the evaluation of a person's capacity to testify is a specialized one. . . . Therefore, if this is in question, that evaluation should be sought."  Dr. Schwartzman believed that "based on Mr. Palughi's lack of obvious cognitive deficits, lack of mood symptoms which would impair his ability to meaningfully participate in testimony, and his lack of acute psychiatric symptoms, his understanding of his situation, the risks and benefits of participation in the legal process, He [sic] seems to have the capacity to testify. . .."

6

Palughi to "wait a minute" rather than asking the court to cut Palughi off. Defense counsel did not object at the time.

Following closing arguments, Juror Number 8 expressed job-related concerns about continuing jury service. After the District Court contacted the employer, the juror reconfirmed that the juror could abide by the oath to remain fair and open minded. The District Court ordered the juror not to discuss the matter with the other jury members. The court retained the juror.

O'Grady challenges four aspects of the District Court's jury instructions. His contentions are as follows: First, the District Court erroneously charged the jury about not drawing an unfavorable inference from O'Grady's constitutional right to remain silent and not testify. Second, the District Court erroneously instructed the jury that a conspiracy, once formed, is presumed to continue until its objects are completed or there is an affirmative act of termination by one of its members. Third, the District Court misinstructed the jury regarding the *mens rea* required for a Hobbs Act conviction because the instruction failed to convey the requirement that the defendant "*agree* to take or withhold some official action in exchange for the benefit received." Fourth, the District Court erred when it instructed the jury that it was sufficient for the Government to prove that the defendant committed just one of the acts charged in the indictment when the indictment used the conjunctive "and" rather than the disjunctive "or" as used in the underlying statute.

The District Court exercised subject matter jurisdiction under 18 U.S.C. § 3231. We have appellate jurisdiction over challenges to the final judgment of conviction under 28 U.S.C. § 1291.

## II. DISCUSSION

### A. Sufficiency and Weight-of-the-Evidence

O'Grady argues that the government failed to prove guilt beyond a reasonable doubt. Where, as here, the defendant did not preserve an insufficiency of the evidence claim by filing a timely motion for a judgment of acquittal, we reverse only if we find "plain error." *See* Fed. R. Crim. P. 52(b); *U.S. v. Wolfe*, 245 F.3d 257, 260-61 (3d Cir. 2001). We review the record in the light most favorable to the prosecution to determine whether any rational trier of fact could have found proof of guilt beyond a reasonable doubt based on the available evidence. *Wolfe*, 245 F.3d at 261.

Regarding "Operation Bid Rig", O'Grady argues the government failed to provide sufficient evidence of the intent and/or knowledge required. Counts 1 and 2 charged attempted extortion under color of official right, in violation of 18 U.S.C. § 1951(a). "[T]he Government need only show that a public official has obtained a payment to which he was not entitled, knowing that the payment was made in return for official acts." *U.S. v. Urban*, 404 F.3d 754, 768 (3d Cir. 2005). Count 3 charged O'Grady with bribery in connection with federal programs, in violation of 18 U.S.C. § 661(a)(1)(B). The statute does not require proof of a specific *quid pro quo*, or payment in return for an identifiable official act. *U.S.*

8

*v. Gee*, 432 F.3d 713, 714-15 (7th Cir. 2005). The record is full of evidence and testimony from which a reasonable juror could conclude that O'Grady possessed the requisite *mens rea* required by both statutes.

Regarding the ITCJ scheme, O'Grady argues that the government failed to prove the elements of Counts 4 and 5, which charged O'Grady with extorting cash payments and accepting bribes from the Appolonias. O'Grady argues that the only evidence in support of these charges was Palughi's testimony, there was no direct evidence that the envelopes given to him by ITCJ contained cash, and there was no documentary evidence to corroborate the charges. These arguments lack merit. Even if the recorded conversations did not corroborate Palughi's testimony, "uncorroborated accomplice testimony may constitutionally provide the exclusive basis for a criminal conviction." *See U.S. v. De Larsa*, 450 F.2d 1057, 1060 (3d Cir. 1971) (citing *Caminetti v. U.S.*, 242 U.S. 470 (1917)). Furthermore, "[t]he government must prove each element beyond a reasonable doubt, but may do so solely by circumstantial evidence." *U.S. v. Dent,*, 149 F.3d 180, 188 (3d Cir. 1998). A reasonable jury could infer from the evidence that O'Grady participated in this scheme and that the envelopes contained cash.

O'Grady also argues that the jury's verdict was against the reasonable weight of the evidence. This claim is waived because O'Grady's Rule 33 motion was untimely filed and the government objected. *See Eberhart v. U.S.*, 126 S. Ct. 403, 407 (2005). Even assuming O'Grady did not waive this claim, we find no basis for granting this extraordinary relief.

9

"New trials because the verdict is against the weight of the evidence are proper only when the record shows that the jury verdict resulted in a miscarriage of justice or where the verdict, on the record, cries out to be overturned or shocks the conscience." *Williamson v. Consolidated Rail Corp.*, 926 F.2d 1344, 1353 (3d Cir. 1991). We have reviewed the record and find no plausible basis to disturb the verdict.

## B. Admissibility of Testimony

O'Grady argues that the District Court improperly allowed an FBI agent to testify as to his understanding of tape recorded conversations between himself and O'Grady. Specifically, O'Grady challenges the admissibility of the agent's testimony that O'Grady's statement "you guys are hot" meant "that law enforcement is taking an interest or looking into our activities." We review this claim for abuse of discretion. *See U.S. v. Williams*, 458 F.3d 312, 315 (3d Cir. 2006). Under Fed. R. Evid. 701, this Court permits lay witnesses to interpret "code-like" conversations if it is helpful to an understanding of the testimony of the witness on the stand. *See U.S. v. De Peri*, 778 F.2d 963, 977-98 (3d Cir. 1985). But interpretation of clear statements is not permissible. *See U.S. v. Dicker*, 853 F.2d 1103, 1109-10 (3d Cir. 1988). The meaning of O'Grady's statements were not clear and straightforward but "code-like." The agent's testimony was based on his direct perception of the conversation and helped the factfinder to determine O'Grady's mental state regarding his involvement in the scheme. We find no abuse of discretion.

## C. Confrontation Clause and Cross-Examination of Palughi

O'Grady argues the District Court violated his Sixth Amendment right to confrontation. First, he argues that the District Court's failure to hold a Fed. R. Evid. 104 competency hearing caused him to curtail his cross-examination of Palughi. He also argues that the District Court impermissibly interrupted his cross-examination of Palughi when it instructed counsel to rephrase a question, warned counsel not to be argumentative or repetitive, asked Palughi a series of questions, and chastised counsel in front of the jury. The "Confrontation Clause guarantees an *opportunity* for effective cross-examination that is effective in whatever way, and to whatever extent, the defense might wish." *Delaware v. Fensterer*, 474 U.S. 15, 20 (1985) (per curiam) (emphasis in original). However, a district court "retains wide latitude insofar as the Confrontation Clause is concerned to impose reasonable limits on cross-examination to avoid, among other things, harassment, prejudice, confusion of the issues, or interrogation that is only marginally relevant or repetitive." *U.S. v. Lore*, 430 F.3d 190, 207-08 (3d Cir. 2005). We review limitations on cross-examination for abuse of discretion. *Id.* O'Grady had the opportunity to cross-examine Palughi to whatever extent he wished. To the extent, if at all, O'Grady limited his cross-examination due to concern for Palughi's mental health, this decision was self-imposed and not judicial error. Furthermore, the District Court's interruptions were within the District Court's discretion to impose reasonable limits on the cross-examination.

**E. Transcripts of Recorded Evidence**

O'Grady argues the District Court erred by providing the deliberating jury with transcripts of recordings played during trial without also providing the jury with the recordings and a tape player. We review the decision to admit properly authenticated transcripts for abuse of discretion. *See U.S. v. Ademaj*, 170 F.3d 58, 65 n.6 (1st Cir. 1999). When the District Court allows juries to use transcripts of taped conversations as an aid during deliberations, this Court has found no abuse of discretion when there is "nothing in the record to indicate that the jury relied improperly on the transcript or that the transcript contained inaccuracies that would substantially affect defendant's rights in the event the jury had relied upon it." *U.S. v. Pecora*, 798 F.2d 614, 631 (3d Cir. 1986). O'Grady does not point to any such inaccuracy. We decline to accept O'Grady's argument that a tape player *must* accompany the transcripts during deliberations. *See U. S. v. Rengifo*, 789 F.2d 975, 980 (1st Cir. 1986). The District Court repeatedly told the jury that the actual recordings would be available upon request and that the jury should rely on the actual recordings in the event of any inconsistency. Accordingly, we find no abuse of discretion.

**F. Retaining the Juror**

O'Grady argues the District Court erred by retaining Juror No. 8. Specifically, he claims that retaining the juror potentially influenced and rushed the jury's deliberations. Where, as here, the defendant failed to object to the trial court's decision and apparently acquiesced by stating "we don't care if you substitute," he cannot later claim error. "[I]f a

defendant has an objection, there is an obligation to call the matter to the court's attention so the trial judge will have the opportunity to remedy the situation." *Estelle v. Williams*, 425 U.S. 501, 508 n.3 (1976).

Even assuming O'Grady did not waive this claim, it lacks merit. We review a District Court's decision to excuse or retain a sitting juror for abuse of discretion. *See U.S. v. Cameron*, 464 F.2d 333, 334-35 (3d Cir. 1972) (per curiam). Where a district court interviews a juror and takes affirmative steps to ascertain that the juror can serve fairly and impartially, we have held there is no abuse of discretion. *See U.S. v. Vega*, 285 F.3d 256, 265-67 (3d Cir. 2002). The District Court properly interviewed the juror, ascertained that the juror could remain fair and impartial, and cautioned the juror not to discuss the matter with the other jury members. Therefore, we find no abuse of discretion.

**G. Jury Instructions**

O'Grady challenges four aspects of the District Court's jury instructions. "Review of the legal standard enunciated in a jury instruction is plenary, but review of the wording of the instruction, *i.e.*, the expression, is for abuse of discretion." *U.S. v. Yeaman*, 194 F.3d 442, 452 (3d Cir. 1999) (internal quotations and citations omitted). First, although O'Grady requested the jury instruction regarding a defendant's decision not to testify and affirmed he wanted it after the District Court read the instruction aloud, he now challenges that instruction. Generally, "a party may not challenge as error a ruling or other trial proceeding invited by that party." *U.S. v. Fulford*, 267 F.3d 1241, 1247 (11th Cir. 2001) (internal

13

quotation omitted). Even assuming O'Grady may challenge this instruction, the District Court's instruction was almost identical to the one this Court approved in *U.S. v. Flores*, 454 F.3d 149, 159-60 (3d Cir. 2006). Therefore, we find no abuse of discretion.

Next, O'Grady argues the District Court improperly instructed the jury that it was sufficient for the Government to prove that the defendant committed just one of the acts charged in the indictment when the indictment used the conjunctive "and" rather than the disjunctive "or" as used in the underlying statute. We have held that while an indictment employs the conjunctive, jury instructions may employ the disjunctive where the statute employs the disjunctive. *U.S. v. Cusumano*, 943 F.2d 305, 311 (3d Cir. 1991). Accordingly, the District Court's instruction to the jury was proper.

Additionally, O'Grady argues the District Court incorrectly charged the jury regarding conspiracy liability and the *mens rea* required for a Hobbs Act conviction. O'Grady failed to object to these instructions at trial. Under the plain error standard, before we can correct an error not raised at trial, we must find (1) an error, (2) that is plain, and (3) that affected substantial rights. *Flores*, 454 F.3d at 156-57. "If all three conditions are met, we may in our discretion grant relief, but only if the error seriously affects the fairness, integrity or public reputation of the judicial proceedings." *Id.* (internal quotations and citations omitted).

O'Grady's arguments misstate the law underlying the challenged instructions. Regarding conspiracy liability, the District Court properly instructed the jury that a conspiracy, once formed, is presumed to continue until its objectives are accomplished or

until an affirmative act of termination by its members. Contrary to O'Grady's contention, this does not place a burden on the defendant to disprove his participation in the conspiracy. *U.S. v. Steele*, 685 F.2d 793, 803-04 (3d Cir. 1982). Rather, once the government has shown the defendant entered into a conspiracy, the defendant must "present evidence" of withdrawal from the conspiracy. *Id.* If the defendant makes this prima facie showing, the government must rebut it. *Id.* O'Grady confuses burden of proof with burden of production. Therefore, we find no error.

Regarding the *mens rea* required for a Hobbs Act conviction, contrary to O'Grady's argument that the government must prove O'Grady entered into an "actual agreement", the "[g]overnment need only show that a public official has obtained a payment to which he was not entitled, knowing that the payment was in return for official acts . . ." *U.S. v. Bradley*, 173 F.3d 225, 231 (3d Cir. 1999). The District Court's instruction properly conveyed that requirement. Therefore, we find no error.

## III. <u>CONCLUSION</u>

For the foregoing reasons, we will affirm the District Court's judgment of conviction.

15