NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 10-4567
_____

UNITED STATES OF AMERICA

v.

DANIEL VAN PELT,

Appellant

_____

On Appeal from the United States District Court
for the District of New Jersey
(D.C. No. 09-cr-00912)
District Judge:  Honorable Joel A. Pisano
_____

Argued September 21, 2011
Before:  FISHER, HARDIMAN and GREENAWAY, JR., *Circuit Judges*.

(Filed: October 18, 2011)

Steven G. Sanders [Argued]
Mark E. Coyne
Office of United States Attorney
970 Broad Street, Room 700
Newark, NJ 07102-0000
        *Attorneys for Plaintiff-Appellee*

Robert E. Margulies [Argued]
Margulies Wind
3 Second Street
Plaza 10, Suite 1201
Harborside Financial Center
Jersey City, NJ 07311
        *Attorneys for Defendant-Appellant*

———————
OPINION OF THE COURT
———————

HARDIMAN, *Circuit Judge*.

Daniel Van Pelt appeals his judgment of conviction and sentence following a jury

trial.  We will affirm.

I

Because we write for the parties, we recount only the essential facts and

procedural history.  We review the facts in the light most favorable to the Government, as

the verdict winner.  *United States v. Hoffecker*, 530 F.3d 137, 146 (3d Cir. 2008) (citing

*United States v. Wood*, 486 F.3d 781, 783 (3d Cir. 2007)).

Van Pelt was indicted for attempted extortion under color of official right in

violation of 18 U.S.C. § 1951(a) and federal program bribery in violation of 18 U.S.C. §

666(a)(1)(B).  He was convicted on both counts after an eight-day jury trial, and the

District Court sentenced him to 41 months imprisonment.

Van Pelt held two elected offices over the course of his career in state government.

He was a committeeman on the Ocean Township Committee from 1998 until he resigned

from the post on February 28, 2009.  (J.A. 696–97.)  He was also an assemblyman for the

State of New Jersey from 2008 until he relinquished the position following his arrest in

July 2009.  (J.A. 862, 868–69.)  In his role as a state legislator, Van Pelt served on a

committee that oversees the New Jersey Department of Environmental Protection (DEP). The DEP is charged with, among other things, enforcing the Coastal Area Facilities Review Act (CAFRA), which requires new developments to meet certain environmental standards. As a committeeman, Van Pelt sought developers who were interested in building developments in the township.

The evidence at trial showed that on at least six occasions between December 2008 and May 2009, Van Pelt met with Solomon Dwek, who agreed to cooperate with the Government's efforts to ferret out corruption after he pleaded guilty to bank fraud and money laundering. Dwek and Van Pelt also exchanged emails and telephone calls. Dwek, under the alias "David Esenbach," found Van Pelt after bribing another New Jersey official to obtain an introduction. Dwek posed as a real estate developer interested in a site in Waretown, an unincorporated area within Ocean Township. Throughout their many recorded conversations, Dwek and Van Pelt, using euphemisms and allusions, agreed that, in exchange for money, Van Pelt would assist Dwek both in obtaining expedited CAFRA review and in presenting his development proposal to the township committee in charge of selecting a developer for the site.[1] Dwek testified that these conversations constituted a scheme to exchange money for official assistance in the development process. Van Pelt, on the other hand, testified that the conversations set up

---

[1] It appears CAFRA approval of the site was not necessary because it had been designated as a "center." But Van Pelt led Dwek to believe that CAFRA review would be problematic and that he had the power to expedite the process.

3

a legally permissible "consulting" arrangement whereby he would assist Dwek after he resigned from the local committee. On February 21, 2009, Van Pelt accepted an envelope from Dwek containing $10,000 in cash at a restaurant in Atlantic City.

## II

The District Court had jurisdiction pursuant to 18 U.S.C. § 3231. We have jurisdiction pursuant to 18 U.S.C. § 3742 and 28 U.S.C. § 1291. Van Pelt concedes, as he must, that we review for plain error because he did not object at trial to any of the issues he presents on appeal. *See* Fed. R. Crim. P. 52(b). To meet this standard, Van Pelt must show: (1) error, (2) that was "clear or obvious," (3) that "affected [his] substantial rights," and (4) that "'seriously affect[s] the fairness, integrity or public reputation of judicial proceedings.'" *Puckett v. United States*, 129 S. Ct. 1423, 1429 (2009) (last alteration in original) (quoting *United States v. Olano*, 507 U.S. 725, 736 (1993)). The decision whether to correct a plain error that satisfies the first three prongs of the standard is discretionary, while the fourth prong is used to guide the exercise of that discretion. *Id.*

## A

Van Pelt first argues that the jury instruction on the bribery count was defective because it did not require a connection between the thing given and an official act performed by the bribed official. The jury charge stated:

> In order to find the defendant guilty of this offense, count two, bribery, you must find that the Government proved each of the following five elements beyond a reasonable doubt: First, that at the time alleged in the indictment, the defendant was an agent of the State of New Jersey;

4

second, that the State of New Jersey was a state Government and that it received federal benefits in excess of $10,000 in a one-year period; third, that the defendant agreed to accept or accepted something of value from the cooperating witness; fourth, that the defendant acted knowingly, willfully and corruptly with the intent to be influenced or rewarded in connection with the business, a transaction or a series of transactions of the State of New Jersey; fifth, that the value of the business, transaction or series of transactions to which the payment related was at least $5,000.

(J.A. 1139.) The District Court also explained each element in greater detail and defined what it means to "act corruptly."

We are not persuaded that the District Court erred. "We review jury instructions as a whole and in light of the evidence." *United States v. Petersen*, 622 F.3d 196, 203 (3d Cir. 2010). In addition, "a district court has broad discretion in fashioning a jury charge as long as it communicates 'the substance of the law' so the jury is not misled or confused." *Id.* (quoting *United States v. McGill*, 964 F.2d 222, 235 (3d Cir. 1992)).

Van Pelt essentially asserts that the District Court was required to use the words "in exchange for" or "quid pro quo" in charging the jury on count two. Even if he is correct that the notion of a quid pro quo is an element of the offense,[2] our case law does

---

[2] Van Pelt relies on *United States v. Cicco*, 938 F.2d 441 (3d Cir. 1991), *United States v. Kemp*, 500 F.3d 257 (3d Cir. 2007), and *United States v. Sun-Diamond Growers of California*, 526 U.S. 398 (1999), for the proposition that § 666 requires a quid pro quo. *Cicco* used "quid pro quo" only in passing, 938 F.2d at 444 ("We begin by acknowledging that a solicitation of specific election day services with municipal employment as the *quid pro quo*, might come within the literal language of § 666."), and when read carefully supports only the proposition that a quid pro quo is sufficient, as opposed to necessary, to lead to a bribery conviction. *See United States v. Gee*, 432 F.3d 713, 714 (7th Cir. 2005). *Sun-Diamond* and *Kemp* are distinguishable because those

not require that such a phrase be included verbatim in the charge. *See United States v. Bryant*, --- F.3d ----, 2011 WL 3715811, at *10 & n.16 (3d Cir. Aug. 25, 2011) ("The Government argues that § 666 does not require proof of a *quid pro quo* in any event. Because we believe that the instruction did require the jury to find an exchange, we need not decide that question today."). The charge here adequately conveys the necessity of a link between the thing accepted by Van Pelt and the government business sought to be influenced, and in more ways than one.[3] The District Court told the jury that Van Pelt must have intended to be influenced "corruptly" and "in connection with" the state's business. The additional discussion of the fourth element of the offense makes clear that corrupt actions include those that "accomplish[] some otherwise lawful end or lawful result, *influenced by* the receipt of the thing of value." (J.A. 1141–42 (emphasis added).) Assuming *arguendo* that § 666 requires a quid pro quo, we find no error in the District

---

courts considered a different bribery statute, 18 U.S.C. § 201. *See* infra note 3. The question of the quid pro quo requirement remains an open one in this circuit.

[3] We note that an official act need not actually be executed under the statute. Unlike many bribery prosecutions under 18 U.S.C. § 201(b), no "official act" is required under § 666. *See generally United States v. Abbey*, 560 F.3d 513, 521 (6th Cir. 2009) ("[N]either § 666 nor the Hobbs Act contains the 'official act' language that the [Supreme] Court found 'pregnant with the requirement that some particular official act be identified and proved.'" (quoting *Sun-Diamond*, 526 U.S. at 406)). To be bribed, the government official need only "accept[] or agree[] to accept[] anything of value . . . intending to be influenced or rewarded in connection with any business . . . of such . . . government . . . involving any thing of value of $5,000 or more . . . ." 18 U.S.C. § 666(a)(1)(B). Thus, Van Pelt's argument that he did not take any action on behalf of Dwek is unavailing.

Court's instruction because it required the jury to find that Van Pelt was "influenced" by or "rewarded" with a payment in connection with New Jersey's business.

Even if the District Court erred, it is a logical impossibility that such error was "clear or obvious." Our sister circuits have split over the question of whether § 666 requires a quid pro quo. *Compare United States v. Redzic*, 627 F.3d 683, 692 (8th Cir. 2010) (requiring a quid pro quo), *and United States v. Ganim*, 510 F.3d 134, 148–51 (2d Cir. 2007) (same, on plain-error review), *and United States v. Jennings*, 160 F.3d 1006, 1020–22 (4th Cir. 1998) (finding plain error but affirming the conviction where the jury instruction omitted a quid pro quo element), *with United States v. McNair*, 605 F.3d 1152, 1187–88 (11th Cir. 2010) (no quid pro quo required), *and United States v. Abbey*, 560 F.3d 513, 520–21 (6th Cir. 2009) (same), *and United States v. Gee*, 432 F.3d 713, 714–15 (7th Cir. 2005) (same). Because we have not yet decided the question, it necessarily follows that there can be no plain error. And Van Pelt's failure to raise the issue in the District Court makes this case an unsuitable occasion for us to decide on which side of the circuit split we fall.

B

Van Pelt's second ground for reversal urges us to construe § 666 narrowly so as to avoid reaching officials who do not control government funds. This argument, like his final one, contends that the statute is unconstitutional as applied to his conduct. We disagree for two reasons, one factual and the other legal. First, as a state legislator who

7

voted on the budget, Van Pelt had control of New Jersey funds.[4]  Second, the statute by

its terms requires only that the Government prove that Van Pelt was "an agent of an

organization, or of a State, local, or Indian tribal government" at the time he accepted the

bribe.  18 U.S.C § 666(a)(1).  The statute defines "agent," but that definition does not

include a "control" element.  18 U.S.C. § 666(d)(1); *see United States v. Vitillo*, 490 F.3d

314, 323 (3d Cir. 2007) ("Because § 666(d)(1) does not define an 'agent' as someone

who necessarily controls federal funds, we conclude that the [defendant's] argument

fails.").  Moreover, the Supreme Court has rejected the contention that the bribe must

have affected particular funds in any particular way in order for the statute to

constitutionally proscribe it.  *See Sabri v. United States*, 541 U.S. 600, 605–07 (2004);

*Salinas v. United States*, 522 U.S. 52, 56–60 (1997).  Accordingly, we find no error,

much less plain error, in Van Pelt's conviction on this basis.

C

Finally, Van Pelt questions the reach of federal jurisdiction with respect to both

crimes of conviction, focusing on the fact that he attempted to extort and accepted a bribe

from a cooperating witness pitching a fictitious scheme at the Government's behest.  That

is, he claims that federal interests are not implicated by his susceptibility to a fictitious

scheme that could have no impact on federal interests.

---

[4] Evidence introduced at trial showed that New Jersey receives more than $10,000 from the federal government each year as required by 18 U.S.C. § 666(b), and that the State Assembly votes on the budget.

We have rejected this argument with respect to the extortion conviction under the Hobbs Act and we do so again here. *See United States v. Jannotti*, 673 F.2d 578 (3d Cir. 1982) (en banc). In *Jannotti*, after the jury returned guilty verdicts, the district court granted motions for acquittal, and dismissed the Hobbs Act count of the indictment "for lack of jurisdiction," in part because of "the fictitious nature of the scheme." 673 F.2d at 580–81, 590. We rejected this "impossibility defense" unequivocally. *Id.* at 590–94; *see United States v. Manzo*, 636 F.3d 56, 61 n.4 (3d Cir. 2011); *see also United States v. Urban*, 404 F.3d 754, 766 (3d Cir. 2005) (holding that only a *de minimis* effect on interstate commerce is needed to sustain a Hobbs Act conviction).

The challenge to Van Pelt's bribery conviction fails for analogous reasons. Courts have long held that a defendant may be subject to criminal liability where, if the facts were as he thought them to be, a crime would have been committed. *See, e.g.*, *United States v. Everett*, 700 F.2d 900, 903–08 (3d Cir. 1983) (finding that Congress intended to eliminate the defense of impossibility by passing the Comprehensive Drug Abuse Prevention and Control Act); *Jannotti*, 673 F.2d at 591–92 (citing cases that rejected an impossibility defense). An impossibility defense is no more successful when directed to the federal jurisdictional element of the offense. *See Jannotti*, 673 F.2d at 593 ("[D]efendants' plan to transport the goods interstate, even though unattainable from the outset, sufficiently impinged on an area of federal concern to justify federal regulation and prohibition." (discussing *United States v. Rose*, 590 F.2d 232, 235 (7th Cir. 1978))).

9

State officials who are susceptible to accept bribes in "sting" operations jeopardize the security of federal funds to an extent sufficient to criminalize such bribery. *See id.* at 592 ("Congress can constitutionally reach inchoate offenses because these offenses pose a potential threat to interstate commerce; the existence of such a threat ties 'the proscribed conduct to the area of federal concern delineated by the statute.'" (quoting *United States v. Feola*, 420 U.S. 671, 695 (1975))).[5] Moreover, Van Pelt's crime was not inchoate: the bribery was complete when he accepted a bribe with the intent to be influenced. Thus, we reject Van Pelt's claim that the jurisdictional element of his bribery conviction was in any way contrived because he accepted a bribe with respect to a development project that never existed.

III

For the foregoing reasons, we will affirm the judgment of the District Court.

---

[5] Even though *Jannotti* was concerned with the Hobbs Act, which receives its constitutional sanction from the Commerce Clause, and § 666 is founded on the Spending and Necessary and Proper Clauses, *see Sabri*, 541 U.S. at 605, the logic of *Jannotti* is easily extended. Where there is a constitutionally valid federal interest, Congress may proscribe conduct that raises a "mere" indirect threat to that interest.