RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)

File Name: 18a0061p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

---

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*v.*

ROBERT PORTER,

*Defendant-Appellant.*

No. 17-5064

---

Appeal from the United States District Court
for the Eastern District of Kentucky at Pikeville.
No. 7:15-cr-00022-1—Danny C. Reeves, District Judge.

Decided and Filed:  February 12, 2018[*]

Before:  COLE, Chief Judge; MERRITT and BOGGS, Circuit Judges.

---

#### COUNSEL

**ON BRIEF:**  Jarrod J. Beck, LAW OFFICE of R. MICHAEL MURPHY, PLLC, Lexington, Kentucky, Mark A. Wohlander, WOHLANDER LAW OFFICE, PSC, Lexington, Kentucky, for Appellant.  Charles P. Wisdom, Jr., Jennifer A. Williams, UNITED STATES ATTORNEY'S OFFICE, Lexington, Kentucky, for Appellee.

---

#### ORDER

---

Robert Porter, a federal prisoner, appeals the district court's judgment of conviction.  The parties have waived oral argument, and this panel unanimously agrees that oral argument is not needed.  *See* Fed. R. App. P. 34(a).

---

[*]This decision was originally filed as a panel order on February 12, 2018.  The court has now designated the order for publication.

In 2016, a federal grand jury returned a superseding indictment charging Porter with three counts of theft concerning programs receiving federal funds, in violation of 18 U.S.C. § 666(a)(1)(A), and one count of bribery concerning programs receiving federal funds, in violation of 18 U.S.C. § 666(a)(1)(B). The indictment arose, in pertinent part, from Porter using his power and influence as mayor of Paintsville, Kentucky, to steer business and contracts to companies owned by his co-defendant, Eulas Crace, as well as to ensure payment of a fraudulent invoice to Crace's company. In return, Porter received payments disguised as loans. Porter made a motion for judgment of acquittal following the government's case-in-chief, which the district court denied. The jury found Porter guilty of two counts under § 666(a)(1)(A) and guilty of one count under § 666(a)(1)(B). The district court sentenced Porter to a 48-month term of imprisonment, and Porter timely appealed.

Porter advances four arguments on appeal. First, he argues that his conviction under § 666(a)(1)(B) is unsupported by sufficient evidence. Second, he contends that the admission of a witness's prior statements to investigators violated his confrontation rights. Third, Porter argues that the admission of another witness's deposition testimony violated his confrontation rights. Finally, he contends that cumulative error requires the reversal of his convictions.

## A. Sufficiency of the Evidence

Porter argues that there is insufficient evidence to support his conviction for bribery concerning programs receiving federal funds in violation of § 666(a)(1)(B). Specifically, he argues that the prosecutor failed to present evidence showing that he contemplated a quid pro quo, express or implied, "in connection with" any "official act" in his capacity as Mayor of Paintsville. § 666(a)(1)(B). Additionally, Porter contends that the government failed to present evidence demonstrating that he ever accepted "anything of value . . . intending to be influenced or rewarded in connection with any business, transaction, or series of transactions" of the City of Paintsville. *Id*. Porter does not contest the sufficiency of the evidence with respect to his convictions under § 666(a)(1)(A).

When reviewing sufficiency-of-the-evidence claims, a court must determine "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact

could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979). To prove theft of federal funds, the prosecution must show that Porter was "an agent of an organization, or of a State, local, or Indian tribal government, or any agency thereof" § 666(a)(1), and that he

> corruptly solicit[ed] or demand[ed] for the benefit of any person, or accept[ed] or agree[d] to accept, anything of value from any person, intending to be influenced or rewarded in connection with any business, transaction, or series of transactions of such organization, government, or agency involving any thing of value of $5,000 or more[.]

§ 666(a)(1)(B).

Porter first argues that, pursuant to the Supreme Court's decision in *McDonnell v. United States*, 136 S. Ct. 2355 (2016), the government's burden when prosecuting an individual under § 666(a)(1)(B) must be the same as in prosecutions under the federal bribery statute, 18 U.S.C. § 201, and the Hobbs Act, 18 U.S.C. § 1951. Specifically, Porter asserts that § 666(a)(1)(B) is a bribery statute in form and substance like its counterparts 18 U.S.C. §§ 201 and 1951 and, thus, a conviction under § 666(a)(1)(B) requires evidence of a quid pro quo "in connection with" any "official act."

Porter's reliance on *McDonnell* is misplaced. In *McDonnell*, the Supreme Court limited the interpretation of the term "official act" as it appears in § 201, an entirely different statute than the one at issue here. Moreover, our precedent explicitly forecloses Porter's argument on this point. We have held that the text of § 666(a)(1)(B) "says nothing of a quid pro quo requirement to sustain a conviction, express or otherwise: while a '*quid pro quo* of money for a specific . . . act is sufficient to violate the statute,' it is 'not necessary.'" *United States v. Abbey*, 560 F.3d 513, 520 (6th Cir. 2009) (quoting *United States v. Gee*, 432 F.3d 713, 714 (7th Cir. 2005)). "Rather, it is enough if a defendant 'corruptly solicits' 'anything of value' with the 'inten[t] to be influenced or rewarded in connection' with some transaction involving property or services worth $5000 or more." *Id*. (quoting § 666(a)(1)(B)). We are bound by the holding in *Abbey*, as "a later panel of the court cannot overrule the published decision of a prior panel . . . in the absence of en banc review or an intervening opinion *on point* by the Supreme Court."

*United States v. Lee*, 793 F.3d 680, 684 (6th Cir. 2015) (emphasis added).  Accordingly, Porter's *McDonnell*-based argument is without merit.

Porter next argues that the government failed to meet its burden of production with respect to the specific-intent element of § 666(a)(1)(B).  However, a review of the record reflects that Porter waived his sufficiency-of-the-evidence argument on this point.  "Although specificity in a Rule 29 motion is not required, where the defendant makes a Rule 29 motion on specific grounds, all grounds not specified in the motion are waived."  *United States v. Chance*, 306 F.3d 356, 369 (6th Cir. 2002); *accord United States v. Wesley*, 417 F.3d 612, 617-18 (6th Cir. 2005).  Here, defense counsel made the following Rule 29 motion following the government's case-in-chief:

> If I could just start off by saying that I would start with the bribery count first, and I would offer, Your Honor, that at this point in time [McDonnell] versus United States the — the United States has not offered any proof to support that there was a bribe or any agreement on the part of Robert Porter to do anything in his official capacity in this case as it relates to — and I believe that there were — bribes have to do with the three loans.
>
> So under the authority of [McDonnell] versus United States, I believe Count 4 needs to be dismissed.

The remainder of defense counsel's Rule 29 motion pertained to the other counts contained in the indictment, which Porter does not contest on appeal.  Thus, as it pertains to his indictment under § 666(a)(1)(B), Porter's Rule 29 motion was specifically limited to his *McDonnell*-based argument, and Porter has therefore waived all other sufficiency-of-the-evidence arguments.  The district court therefore did not err by denying Porter's Rule 29 motion for judgment of acquittal.

**B.  Admission of Witnesses' Out-of-Court Statements**

Porter argues that his confrontation rights were violated when the district court permitted Detective Amos Mitch Atkins to testify about prior statements made by Chet Crace, Eulas Crace's son, to investigators during an interview on April 10, 2015.  Chet Crace asserted his Fifth Amendment privilege against self-incrimination at trial.  Thereafter, Detective Amos testified regarding Chet Crace's:  (1) inability to explain discrepancies in two storage bills that his father's company had submitted to the City of Paintsville; (2) statements made concerning

checks that had been written to Porter's wife; and (3) statement that certain billing records related to the storage invoices had been destroyed in a fire.  The district court permitted Detective Amos's testimony regarding Chet Crace's various statements, determining that the testimony was not hearsay because it was offered to prove the making of the statements, whose falsity would later be shown.

We review a district court's evidentiary rulings for an abuse of discretion.  *Griffin v. Finkbeiner*, 689 F.3d 584, 592 (6th Cir. 2012).  But whether a statement is hearsay is a legal question that we review de novo.  *See Back v. Nestle USA, Inc.*, 694 F.3d 571, 577 (6th Cir. 2012).  "An abuse of discretion occurs when the reviewing court is left with the definite and firm conviction that the trial court committed a clear error of judgment."  *Tennial v. United Parcel Serv., Inc.*, 840 F.3d 292, 301 (6th Cir. 2016) (quoting *F.T.C. v. E.M.A. Nationwide, Inc.*, 767 F.3d 611, 623 (6th Cir. 2014)).  Hearsay is "an out-of-court statement 'offered in evidence to prove the truth of the matter asserted.'"  *Moore v. KUKA Welding Sys. & Robot Corp.*, 171 F.3d 1073, 1081 (6th Cir. 1999) (quoting Fed. R. Evid. 801(c)).  Thus, statements that are offered to prove the *falsity* of the matter asserted are not hearsay.  *United States v. Hathaway*, 798 F.2d 902, 905 (6th Cir. 1986).

Detective Atkins's testimony concerning Chet Crace's prior statements to investigators did not violate Porter's confrontation rights because they were not offered to prove the truth of the matter asserted.  Rather, it was the government's position that Chet Crace's statements were false.  *See United States v. Sherlin*, 67 F.3d 1208, 1216 (6th Cir. 1995) (citing *Anderson v. United States*, 417 U.S. 211, 220-21 (1974) ("[T]he point of the prosecutor's introducing those statements was simply to prove that the statements were made so as to establish a foundation for later showing, through other admissible evidence, that they were false.")).  Because the government's position was that Chet Crace's prior statements to investigators during the April 10, 2015, interview were false, Atkins's statements were not hearsay and did not implicate Porter's confrontation rights.  *See Crawford v. Washington*, 541 U.S. 36, 59 n.9 (2004); *United States v. Thompson*, 501 F. App'x 347, 363 (6th Cir. 2012).

Porter next argues that his confrontation rights were violated when the district court permitted the government to admit the deposition testimony of Paintsville's former city treasurer,

Laura "Jackie" Miller. The Confrontation Clause of the Sixth Amendment protects a criminal defendant's right "to be confronted with the witnesses against him." U.S. CONST. amend. VI. Under the Confrontation Clause, testimonial, out-of-court statements offered against the accused to establish the truth of the matter asserted may be admitted only where (1) the declarant is unavailable and (2) the defendant has had prior opportunity to cross-examine the declarant. *Crawford*, 541 U.S. at 68. Here, Porter was present with counsel at Miller's deposition and defense counsel cross-examined Miller. Porter's argument hinges on the "unavailability" portion of *Crawford's* holding. We review for abuse of discretion the admission of deposition testimony at trial in place of a live witness. *United States v. Campbell*, 845 F.2d 1374, 1378 (6th Cir. 1988).

"When the question is one of the health of the witness, there must be 'the requisite finding of necessity' which is 'case specific' in order to dispense with confrontation in open court." *Stoner v. Sowders*, 997 F.2d 209, 212 (6th Cir. 1993) (quoting *Maryland v. Craig*, 497 U.S. 836, 855 (1990)). When the government claims that a witness is unavailable due to illness:

> the judge must consider both the duration and the severity of the illness. With regard to duration, it is not essential to a finding of unavailability that the illness be permanent. The duration of the illness need only be in probability long enough so that, with proper regard to the importance of the testimony, the trial cannot be postponed.

*Burns v. Clusen*, 798 F.2d 931, 937-38 (7th Cir. 1986); *see also Stoner*, 997 F.2d at 212-13.

Prior to the start of trial, counsel for the government filed a motion under seal for leave to take Miller's deposition "in order to preserve her testimony for trial." Within the motion, counsel for the government explained that Miller is a cancer survivor but that her cancer had recently returned. The motion noted that Miller was scheduled for invasive surgery the week before she was expected to testify at trial. Counsel for the government subsequently emailed a letter from Miller's doctor to the district court and Porter's trial counsel. The letter explained that Miller was "unable to appear in court" due to her illnesses, which included stage IV tongue cancer, gynecologic cancer, and melanoma. The letter went on to say that Miller was "quite ill and unable to present in court as a witness" and that a recent surgical procedure had left Miller

"weak," "unable to get out of bed," "unable to travel outside of her home," and "debilitated." The doctor further opined that it would be unsafe for Miller to try to appear in court and that her weakened condition would "continue for an extended period of time (months to a year)."

Based on the foregoing, the government made a sufficient showing regarding Miller's unavailability to testify at trial. The doctor's letter was specific as to the nature of Miller's illness and very clearly opined that Miller's health would be jeopardized if she were required to testify at trial. Miller's doctor and counsel for the government both specifically articulated the nature and severity of Miller's health problems to the district court. Accordingly, because Porter was able to, and did, cross-examine Miller at her deposition, and because the government sufficiently demonstrated her unavailability to testify at trial, no Confrontation Clause violation occurred. The district court therefore did not abuse its discretion in admitting Miller's deposition at trial.

### C. Cumulative Error Doctrine

Finally, Porter argues that the cumulative effect of the district court erroneously admitting Chet Crace's out-of-court statements and Jackie Miller's deposition testimony into evidence was so prejudicial as to warrant a new trial. "A cumulative error claim alleges a violation of a defendant's due process right to a fair trial." *United States v. Eaton*, 784 F.3d 298, 310 (6th Cir. 2015). "However, cumulative-error analysis is not relevant where no individual ruling was erroneous." *United States v. Deitz*, 577 F.3d 672, 697 (6th Cir. 2009). The district court did not err by admitting Chet Crace's statements and Jackie Miller's deposition testimony. Accordingly, cumulative error did not render Porter's trial unfair. *See id.*

Based on the foregoing, we **AFFIRM** the district court's judgment.

ENTERED BY ORDER OF THE COURT

_____

Deborah S. Hunt, Clerk