# United States Court of Appeals
# for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**

March 4, 2026

Lyle W. Cayce
Clerk

No. 25-60099

United States of America,

*Plaintiff—Appellee*,

*versus*

Marshand Crisler,

*Defendant—Appellant*.

_____

Appeal from the United States District Court
for the Southern District of Mississippi
USDC No. 3:23-CR-30-1

_____

Before Clement, Douglas, and Ramirez, *Circuit Judges*.

Per Curiam:*

Marshand Crisler appeals his conviction after a jury trial for knowingly soliciting, demanding, accepting, or agreeing to accept a bribe under 18 U.S.C. § 666(a)(1)(B) and selling or disposing of ammunition to a convicted felon under 18 U.S.C. §§ 922(d) and 924(a)(2). We AFFIRM.

---

* This opinion is not designated for publication. *See* 5th Cir. R. 47.5.

No. 25-60099

I

On September 14, 2021, the Drug Enforcement Administration searched Tonarri Moore's home and discovered cocaine, marijuana, firearms, and ammunition. After the search was completed, a Federal Bureau of Investigation (FBI) agent searched Moore's cellphone. The search revealed that Crisler, the recently appointed interim sheriff of Hinds County, Mississippi, had contacted Moore the previous day. At the time, Crisler was campaigning to be elected sheriff via special election on November 2nd.

The FBI agent asked Moore if he had been bribing Crisler. When Moore denied it, the agent asked if Moore could bribe Crisler, and Moore said he would try. Moore and Crisler, who had previously met at the county jail when Moore was serving a term of imprisonment and Crisler was a law enforcement officer, met several times over the next few months, and their interactions were recorded via a wire worn by Moore.

During their first meeting on September 14th, Crisler asked Moore for $5,000 to help with campaign advertisements. Moore said he could provide the money but stated that he did not want to repeat prior situations when he felt his support was ignored after officials he assisted were elected. Moore asked Crisler what he would do if he saw paperwork come across his desk with Moore's name on it, and Crisler said, "[p]ay attention to it and then give [Moore] a phone call." Crisler also stated, "Let's get this office, and I got you."

Moore gave Crisler the first half of the $5,000 when the two men met at a cigar lounge three days later. At the cigar lounge, Moore asked Crisler if he could move his incarcerated cousin "somewhere safer," and Crisler said he could be moved to the medical part of the jail to be evaluated for a shoulder injury. Crisler stated that moving Moore's cousin was his "pledge to [Moore]."

Moore and Crisler met again the following week at Moore's strip club, and Moore gave Crisler the second half of the $5,000. During this meeting, Moore told Crisler he needed a job for the health insurance, and Crisler told Moore he would "find [him] something."

In late October 2021, Crisler asked Moore for $2,000 to help pay for political advertisements. Moore agreed. A few days later, Moore asked Crisler if he could get him ammunition for a gun. Crisler agreed, and later that day came to Moore's strip club and collected the $2,000. While at the club, Crisler realized he had forgotten the ammunition, so he left and met Moore later that day to give him fourteen rounds of ammunition.

The special election for Hinds County sheriff was held in early November, and Crisler secured enough votes to make it to a runoff election to be held later that month. A few days before the runoff election, Crisler asked Moore for an additional $2,500. Moore and Crisler met at Moore's strip club, and Moore gave Crisler the money. During this interaction, Moore also told Crisler he needed a gun at his strip club. Crisler told Moore he understood, and that he would give Moore "freedom that nobody else" had. Crisler lost the runoff election.

In 2023, a grand jury returned a two-count indictment charging Crisler with knowingly soliciting, demanding, accepting, or agreeing to accept a bribe in his role as sheriff in violation of 18 U.S.C. § 666(a)(1)(B), and knowingly giving ammunition to a person he knew was previously convicted of a felony in violation of 18 U.S.C. §§ 922(d) and 924(a)(2).

At trial, the government presented testimonial evidence from the FBI agent and Moore. After the government rested, Crisler moved for a judgment of acquittal pursuant to Rule 29 of the Federal Rules of Criminal Procedure. Crisler argued that the evidence was insufficient to support that "he corruptly solicited or demanded anything of benefit with the intent to be

influenced," or that he "knew or had reasonable cause to believe that . . . Moore was a convicted felon." The district court denied the motion.

Crisler testified in his own defense. After his testimony, the district court asked Crisler's defense counsel if the defense had rested, and counsel replied, "I agree, Judge, we've rested. I'll renew whatever motions, but we've rested." The district court instructed the jury that it could conclude the government entrapped Crisler to commit the criminal offense before it commenced its deliberations.

The jury found Crisler guilty on both counts. Crisler filed timely motions for a new trial and judgment notwithstanding the verdict. The district court denied the motions. The district court sentenced Crisler to thirty months of imprisonment followed by three years of supervised release. Crisler timely appealed.

## II

On appeal, Crisler argues (1) that he was entrapped as matter of law and (2) that the evidence was insufficient to support his conviction for quid pro quo bribery. The government argues that there was ample evidence at trial that Crisler was predisposed to commit the crimes of conviction and that the government did not improperly induce them, and that there was sufficient evidence to support a quid pro quo bribery conviction because Crisler accepted $9,500 in exchange for several favors.

## A

First, Crisler cannot show that he was entrapped as a matter of law. The parties disagree as to what standard of review applies to this claim: Crisler argues the de novo sufficiency-of-the-evidence standard of review for preserved claims applies, and the government argues that the claim was not preserved, so a lower devoid-of-evidence standard applies. We need not

decide the standard of review issue here. Even assuming the de novo standard applies, there was more than sufficient evidence to support the jury's rejection of the entrapment defense. *See United States v. McGee*, 821 F.3d 644, 646 (5th Cir. 2016) (per curiam) (declining to decide the standard of review where sufficiency challenge failed even under the less deferential standard).

"Entrapment can be disproved by proving beyond a reasonable doubt *either* that the defendant was not induced or that he was predisposed to commit the crime." *United States v. Wise*, 221 F.3d 140, 154 (5th Cir. 2000) (emphasis added). The "principal element in the defense of entrapment" is predisposition. *Mathews v. United States*, 485 U.S. 58, 63 (1988) (citation modified). "[I]f the evidence suggests that the defendant . . . [']readily availed himself of the opportunity to perpetrate the crime, then predisposition is present.'" *United States v. Nelson*, 732 F.3d 504, 514 (5th Cir. 2013) (quoting *United States v. Theagene*, 565 F.3d 911, 919 (5th Cir. 2009)). "[A] defendant's ready and willing participation in government-solicited criminal activity, standing alone, is sufficient to prove predisposition." *United States v. Reyes*, 239 F.3d 722, 739 (5th Cir. 2001). "Other factors that may tend to provide predisposition include desire for profit; demonstrated knowledge or experience with the criminal activity under investigation; the character of the defendant, including past criminal history; whether the government first suggested criminal activity; and the nature of the inducement offered by the government." *Id.*

We do not wade far into the predisposition factors here, because Crisler's ready and willing participation in the crimes at issue is amply supported by the record. As to the bribery count, Crisler met with Moore several times over a roughly two-month period, and multiple times dictated the amount of money he wanted to receive. *See United States v. Chavez*, 119 F.3d 342, 346 (5th Cir. 1997) (per curiam) (reasoning that ready agreement

to facilitate a drug sale and knowledge of facilitator's role permitted a jury to reasonably infer predisposition). As to providing ammunition to a known felon, Crisler did at first suggest that Moore could go to stores for ammunition instead, but he soon after told Moore he had "got a few" bullets and could "bring them to" Moore. *See Nelson*, 732 F.3d at 515 n.1 (noting that defendant's refusal of certain offers did not necessarily reflect concern about illegality or hesitation to join the criminal scheme). This is evidence of ready and willing participation that is enough to support the jury's finding.

The same is true as to government inducement. "Government inducement consists of the creative activity of law enforcement officials in spurring an individual to crime." *United States v. Bradfield*, 113 F.3d 515, 522 (5th Cir. 1997). Here, the government's involvement was not "more substantial than simply providing an opportunity or facilities to commit the offense," and had none of the hallmarks like threats, harassment, or taking advantage of a defendant's weakness that courts have been held to constitute inducement. *Theagene*, 565 F.3d at 918, 922; *see also Jacobson v. United States*, 503 U.S. 540, 543, 548–54 (1992) (finding inducement where government used various deceptive stratagems over the course of two and a half years); *Sherman v. United States*, 356 U.S. 369, 373 (1958) (finding inducement where informant exploited multiple intimate conversations about personal experiences with drug addiction and appealed to sympathy as fellow addict in treatment to beg for drugs); *Bradfield*, 113 F.3d at 523 (finding inducement where informant made "approximately eighteen calls during April 1992, in an unrelenting campaign to entice [the defendant] to do a drug deal"). By instructing Moore to approach Crisler, the government did no more than provide him with an opportunity to commit the crimes at issue here. In fact, in the first encounter that is at issue here, it was Crisler who asked Moore for money.

Because the record does not establish that "no rational jury could have found beyond a reasonable doubt either (1) lack of government inducement or (2) predisposition to commit the charged crime," Crisler's entrapment argument fails. *Reyes*, 239 F.3d at 739.

B

Second, the evidence was sufficient to support Crisler's conviction for quid pro quo bribery under 18 U.S.C. § 666(a)(1)(B). The parties do not dispute that Crisler preserved his insufficiency of the evidence claim, so this claim is reviewed de novo, asking whether "[v]iewing the evidence in the light most favorable to the prosecution . . . *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *United States v. Chon*, 713 F.3d 812, 818 (5th Cir. 2013) (per curiam) (quoting *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)). We conclude that it could.

"[Section] 666 makes it a crime for most state and local officials to 'corruptly' solicit, accept, or agree to accept 'anything of value' 'intending to be influenced or rewarded in connection with' any official business or transaction worth $5,000 or more." *Snyder v. United States*, 603 U.S. 1, 8 (2024) (quoting 18 U.S.C. § 666(a)(1)(B), (b)). As the Supreme Court recently confirmed, § 666 applies only to quid pro quo bribery, not mere gratuities. *Snyder*, 603 U.S. at 5. "[B]ribery requires a *quid pro quo*—'a specific intent to give or receive something of value *in exchange* for an official act.'" *United States v. Hamilton*, 46 F.4th 389, 395 (5th Cir. 2022) (quoting *United States v. Sun-Diamond Growers of Cal.*, 526 U.S. 398, 404–05 (1999)).

Crisler argues (1) that the money he received from Moore was no more than a campaign contribution, and thus does not rise to the level of a quid pro quo; and (2) that the acts he promised to perform in exchange for Moore's money were not official acts of the kind § 666 contemplates, but

rather a mix of routine administrative action, innocent campaign promise, and puffery.[1] Neither argument is persuasive.

There is sufficient record evidence to support the jury's finding that Crisler intentionally received Moore's money in exchange for his promised acts. At their first meeting, Crisler requested $5,000 from Moore and, while discussing Moore's concern that he not give something for nothing, promised Moore to give him a call if he saw paperwork with Moore's name on it come across his desk. Moore testified that he understood Crisler's comment to mean Crisler would warn him of anything potentially harmful, such as a raid by the police, and the jury was free to credit this explanation over Crisler's more benign one. *See United States v. Sandlin*, 589 F.3d 749, 754 (5th Cir. 2009) (explaining that where "the evidence lends itself to different interpretations, the jury has wide discretion to choose among them"); *United States v. Delgado*, 984 F.3d 435, 449–50 (5th Cir. 2021) (concluding there was sufficient evidence for a rational juror to conclude a $5,500 cash payment was a bribe rather than a campaign contribution because evidence showed the defendant "intend[ed] to be influenced in his decision"). Similarly, after receiving $2,500 from Moore, Crisler stated that he would move Moore's incarcerated cousin to the medical unit of the prison. There is record evidence that, as interim sheriff, Crisler had the authority to order this move. And after receiving $2,000, Crisler agreed to get Moore a job, which Crisler also had authority to do. Viewing the evidence in the light most favorable to the verdict, a rational jury could have found that the close

---

[1] The parties stipulated that the other requirements for a § 666 conviction were met.

relationship between the money given by Moore and the promises made by Crisler indicated a quid pro quo relationship.

Moore's argument that the actions promised by Crisler do not rise to the level of the "official acts" required by § 666 misapprehends the law. We have never held that § 666 incorporates an "official act" requirement of the kind set out in 18 U.S.C. § 201(a)(3) with respect to bribery of federal officials. *See* 18 U.S.C. § 201(b)(2)(A).[2] The courts of appeals that have addressed this issue have all held that it does not.[3] We agree. Unlike § 201, "the text of § 666 does not include the term 'official act.'" *Lindberg*, 39 F.4th at 166. Rather, § 666 uses more expansive language encompassing influence and rewards "in connection with any business, transaction, or series of transactions" of the relevant federally-funded organization. 18 U.S.C. § 666(a)(1)(B); *see also Lindberg*, 39 F.4th at 171–74 (addressing concern about criminalizing ordinary public officials' responsiveness to citizens' concerns by noting that actions taken "corruptly" for purposes of § 666 must involve a "*fairly specific* quid pro quo," not just a "generalized desire to influence or reward," must implicate the official "business" of the relevant

---

[2] The Supreme Court in *McDonnell v. United States*, 579 U.S. 550 (2016), construed the "official act" requirement in 18 U.S.C. § 201(a)(3) strictly, 579 U.S. at 561–81, but "did not delimit, consider, or invalidate an element of § 666," *Winfield v. United States Prob. & Pretrial Servs.*, 810 F. App'x 343, 344 (5th Cir. 2020) (per curiam).

[3] *See United States v. Lindberg*, 39 F.4th 151, 165–69 (4th Cir. 2022); *United States v. Roberson*, 998 F.3d 1237, 1245–47 (11th Cir. 2021); *United States v. Ng Lap Seng*, 934 F.3d 110, 131–38 (2d Cir. 2019); *United States v. Porter*, 886 F.3d 562, 565–66 (6th Cir. 2018); *see also United States v. Marmolejo*, 89 F.3d 1185, 1191–94 (5th Cir. 1996) (per curiam) (discussing, pre-*McDonnell*, the "broad language" of 18 U.S.C. § 666, which "reaches acts of bribery involving transactions of substantial value," including transactions for "intangibles").

entity, not just the defendant's personal business, and, unlike § 201 bribery, must be valued at $5,000 or more).

The jury was presented with evidence that Crisler promised to notify Moore if his name came across his desk, with an understanding that Moore wanted a heads-up regarding potential police activity; to move Moore's incarcerated cousin to a "safer" part of the jail; and to get Moore a job with the county. It also heard testimony that the latter two acts were within Crisler's authority as interim sheriff. There was ample evidence supporting the jury's conclusion that these were promises to be influenced or rewarded in connection with Crisler's official business.

### III

There was sufficient record evidence to support the jury's findings that there was no entrapment and that Crisler was guilty of quid pro quo bribery. We AFFIRM.